**UNITED STATES v. FOSTER et al.**

United States District Court
S. D. New York.
Oct. 3, 1949.

Charge of the Court Oct. 13, 1949.

See, also, D.C., 83 F.Supp. 197; 9 F.R. D. 394.

368

370

John F. X. McGohey, U. S. Atty., New York City (John F. X. McGohey, U. S. Atty., New York City, Frank H. Gordon, New York City, and Irving S. Shapiro, Washington, D. C., Sp. Assts. to U. S. Atty., Edward C. Wallace, Sp. Asst. to Atty. Gen., Lawrence K. Bailey, Attorney, Department of Justice, Washington, D. C., of counsel), for the Government.

Harry Sacher, New York City, for Irving Potash, Benjamin J. Davis, Jr., and John Gates.

Abraham J. Isserman, New York City, for Gilbert Green and John B. Williamson.

Louis F. McCabe, Philadelphia, Pa., for Henry Winston.

Richard Gladstein, San Francisco, Cal., for Gus Hall and Robert G. Thompson.

George W. Crockett, Jr., Detroit, Mich., for Jacob Stachel and Carl Winter.

Eugene Dennis, pro se.

MEDINA, District Judge.

Framed in a double aspect, I have before me the application of Benjamin J. Davis, Jr., one of eleven defendants, for leave to make a summation to the jury in his own behalf. As a procedural foundation, he has gone through the form of dismissing Harry Sacher, the attorney who has represented him and certain other defendants, at least since January 17, 1949, when the trial of this case was commenced. To become effective such dismissal requires the approval of the court.

The first application was made by Mr. Sacher on September 28, 1949, in the following language:

"I should like to have Mr. Davis sum up on his own behalf, and I wish to make that application now.

"I should perhaps state to the Court that if it is necessary that my relation to Mr. Davis's counsel should be terminated in order to permit him to sum up, in the event that your Honor does not see fit to exercise discretion to permit him to do so, that that will be done."

In arguing in support of the application, Mr. Sacher said:

"I should like to say, in the first place, your Honor, that as you know Mr. Davis is a member of the bar of the Federal Court of the State of Georgia as well as a member of the State courts of Georgia, and the subject matter on which he wishes to speak is singularly one with which he would be best acquainted and believes that he would make the best presentation on his own behalf."

After the Court suggested that Mr. Davis and Mr. Sacher should confer to clarify their position, Mr. Davis said:

"Your Honor, at this point, I would like to ask the Court—to inform the Court that I would like to dismiss my attorney, Mr. Sacher. And I would just like to say the following, that in taking this step I don't wish it to be misconstrued at all—at the dissatisfaction with the services and the counsel of Mr. Sacher. Mr. Sacher has in my opinion done a very excellent job of defending myself as well as the two other defendants, Mr. Potash and Mr. Gates, as well as my co-defendants, all the rest. And I want to pay him the highest tribute for his courage. * * *

"And in my opinion, Mr. Sacher has also, along with his co-attorneys, upheld the highest traditions of the American bar.

"Now, I desire to serve as my own counsel because it appears to me that that is the best way in which I can perform my role for the rest of the trial in this session of the court."

After hearing considerable argument in open court and studying the memoranda submitted by Mr. Davis and the Government, I read with care the authorities cited, and others which my own research brought to light, and spent many hours re-reading portions of the voluminous transcript of the testimony, particularly that of defendant Davis. Having thus informed myself as well as I could with respect to the legal and factual background, I directed further oral argument before me in my chambers on September 30, 1949. I permitted not only Mr. Davis, but Mr. Sacher, Eugene Dennis, one of the defendants who is acting as attorney pro se, and Abraham J. Isserman, attorney for other defendants, to express their views. In support of the applications, it was pressed upon me that Mr. Davis had an absolute right to dismiss his lawyer and make his own summation, and that, even if this were not so, the circumstances were such that he should be permitted to do so. Counsel for the Government vigorously opposed both applications, claiming that Mr. Davis had no such absolute right, that the matter was discretionary with the court and that every consideration of justice and policy required that, in the exercise of discretion, the applications should be denied.

The Sixth Amendment to the Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * *

to have the Assistance of Counsel for his defence." 28 U.S.C.A. § 1654 states: "In all courts of the United States the parties may plead and conduct their own cases personally *or* by counsel." (Emphasis supplied.)

Thus, at the outset, it seems significant that neither the Constitution nor the applicable federal statute lend the slightest support to the claim that Mr. Davis may dismiss his counsel, and sum up in his own behalf, as matter of right. The clear purport of the language just quoted seems to the contrary. One of the fundamental rights of defendants in criminal cases is the right to counsel. But the alleged absolute right, irrespective of the attendant circumstances, to dismiss counsel and carry on *pro se* is a quite different proposition. If such were the law, there would be a fertile field in which defendants in criminal cases could operate to frustrate justice and, under the aegis of an alleged constitutional or other right, resort to every bedevilment of the court and jury that the ingenuity of man could devise.

Thus, even in jurisdictions where a defendant may be heard "in person, by attorney, or both", Ga.Const. Art. 1, Sec. 1, Par. IV (1945), courts have discretion to decide how defendant and counsel will conduct the case, Loomis v. State, 1948, 78 Ga. App. 153, 51 S.E.2d 13, 20–21, and may regulate the defendant's right to be heard, to maintain order, prevent unnecessary consumption of time or other undue delay, to maintain the dignity and decorum of the court and to accomplish a variety of other ends essential to the due administration of justice, which are so various as to make it both unnecessary and unwise to attempt to specify and enumerate them all. Roberts v. State, 1853, 14 Ga. 18, 21.

■ In the federal courts, where a defendant has no right to be heard both in person *and* by attorney, it would seem clear that the control of the proceedings by the court is no less extensive. Cf. Eury v. Huff, 4 Cir., 1944, 141 F.2d 554; Overholser v. De Marcos, 1945, 80 U.S.App.D.C. 91, 149 F.2d 23, 26. And it has been twice held in this Circuit that a defendant in a criminal case has no absolute right to dismiss his lawyer. United States v. Mitchell, 2 Cir., 1943, 137 F.2d 1006, adhered to on rehearing, 2 Cir., 1943, 138 F.2d 831, certiorari denied, 1944, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083; United States v. Gutterman, 2 Cir., 1945, 147 F.2d 540, 157 A.L.R. 1221.

■ Elsewhere it has been held that granting a defendant leave to dismiss counsel and to conduct his own defense is within the trial court's discretion, People v. Wilson, Cal.App. 1941, 115 P.2d 598; cf. Foster v. State, 1945, 148 Tex.Cr.R. 372, 187 S.W. 2d 575, and that a defendant has no absolute right to argue to the jury in his own behalf. State v. Townley, 1921, 149 Minn. 5, 182 N.W. 773, 17 A.L.R. 253.

No authority has been cited to me, nor have I been able to find any, which supports the contention of Mr. Davis that he has an absolute right to dismiss his counsel and sum up in his own behalf. Thus we come to the question of discretion.

■ Were I convinced that these applications are based upon a genuine belief on the part of Mr. Davis that he could on his own behalf make a better summation on the evidence in the record, and by lawful and proper arguments, than could Mr. Sacher, I should without hesitation, permit him to sum up.

The circumstances under which the applications are made, however, and the comments both of Mr. Sacher and Mr. Davis, demonstrate quite clearly that the alleged discharge is colorable and not made in good faith, and I so find. The conduct of the defendants on the one hand, and counsel for the defendants on the other, has been most disorderly and contemptuous during this lengthy trial, which is now in its ninth month. On at least three occasions Mr. Davis has himself been a participant in outbursts of one kind or another, which it was difficult to handle with dignity and a proper restraint. Throughout the trial, witnesses for the defense, on repeated occasions, as part of long and unresponsive answers, deliberately brought in evidence which had just been excluded by rulings of the court. There were many such instances during the examination of Mr. Davis himself (Transcript, pp. 9377–9380; 9427–9430; 9435–

9438). His attack in open court upon my rulings, and the manner in which he made it, show clearly his violent disposition; and his disrespect for the courts is manifest in various parts of his testimony. But for the fact that, after the first few days of the trial, I determined to resort to punitive measures only when the misconduct of the defendants was of such a character as to absolutely compel me to take such action, or abdicate my functions as the judge presiding over the trial, I would have cited him for contempt for what he then did. As it was, he had a very narrow escape, and I told him so. If his past conduct just referred to is indicative of his conception of what he considers his "role for the rest of the trial," it seems clear to me that I must take appropriate action to see to it that the opportunities for similar misconduct are minimized.

It is accordingly my view, and I now make a finding to the effect, that this is merely another one of many manoeuvers by the defense, intended, if the applications were granted, to result in some disruptive and disorderly incidents, which, at this stage of the case, would be difficult if not impossible effectively to restrain or control. For the reasons above indicated, and many others as well, I shall exercise my discretion by denying both applications.

As stated by me during the argument of these applications in open court, I shall permit Mr. Sacher to sum up on behalf of Mr. Davis, with the understanding that by doing so he does not waive any rights of Mr. Davis, which might accrue from the making of the determinations set forth in this opinion.

### Charge of the Court

MEDINA, District Judge.

Ladies And Gentlemen of the Jury:

You now approach the performance of one of the most sacred duties of citizenship, the meting out of justice. Just after you were sworn in as jurors I took occasion to make a few remarks which I shall now repeat in somewhat different form, as the thoughts I then expressed are peculiarly applicable to the period of your deliberations in order to reach a just and true verdict. I then told you to be patient and said that there are few qualities in life so important. I said that if you once get yourself in the frame of mind where you know that you have a task ahead and it has to be done carefully and it has to be done just right and you know that it will be wrong to let little things disturb you, then there comes a certain calm and peace of mind which are of the essence in the administration of justice. When you get yourself in that frame of mind, you find not only that the task ahead becomes much easier, but in addition that the quality of your work in the administration of justice is of the quality that it should be. Justice does not flourish amidst emotional excitement and stress.

The rich and the poor, and persons of every race, creed and condition stand alike before the bar of justice; and you must consider and weigh the evidence carefully, calmly and dispassionately, without the slightest trace of sympathy or prejudice for or against any party to the proceeding. The very importance of the case makes it all the more urgent that you heed these words of caution. In this connection you will bear in mind at all times that these eleven men are charged here as eleven individuals, the guilt or innocence of each of which must be passed on by you separately, pursuant to and in accordance with the instructions which I am about to give you.

Never in all my long experience as a lawyer and in my brief experience as a judge have I seen a jury exhibit so much patience and pay such careful attention at all times to the testimony of the witnesses and the reading of exhibits despite the prolonged duration of this trial. Let me express my sincere appreciation of the way in which you have performed your functions. You deserve special commendation and you are entitled to the gratitude of all citizens of the community for the sacrifice you have made and for the services you are rendering in the faithful performance of a public duty. And so I beg of you to continue on in the same spirit until the end.

The jury is composed of twelve men and women. While undoubtedly their verdict should represent the opinion of each individual juror, it by no means follows that

opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among the jurors themselves, provided this can be done reasonably and consistently with the conscientious convictions of the several jurors. Each juror should listen, with a disposition to be convinced, to the opinions and arguments of the others. It is not intended that a juror should go to the jury room with a fixed determination that the verdict shall represent his opinion of the case at that moment. Nor is it intended that he should close his ears to the arguments of other jurors who are equally honest and intelligent with himself.

The first thing I wish to make plain to you is the way in which our American system of jurisprudence defines the duties of the judge on the one hand and those of the jury on the other. It is exclusively my function clearly to set forth the rules of law which govern the case, with instructions as to their application. On these legal matters you must take the law as I give it to you; you are not at liberty to do otherwise. Thus I shall read the indictment and the statute applicable to the case and I shall construe the statute in those respects in which I think it requires construction and interpretation. I shall explain the function of the indictment, the presumption of innocence, the burden resting upon the government of proving its case to your satisfaction beyond a reasonable doubt and I shall give you the rules governing the trial of conspiracy cases, the rules to guide you in determining the credibility of witnesses and so on. My function is exclusively to instruct you on the law; and you must not permit any notions of your own or any matters referred to by counsel to obscure the fact that you must apply the law as I give it to you.

On the other hand, you are the sole judges of the facts and I shall refer to this circumstance again to impress it upon you. Just as you are not permitted to encroach upon my function in giving instructions on the law, so must I be careful not to encroach upon your function as the sole judges of the facts.

The relevant parts of the statute under the terms of which the indictment was drawn are as follows:

"Sec. 2. (a) It shall be unlawful for any person—

"(1) to knowingly or willfully advocate, * * * or teach the duty, [or] necessity, * * * of overthrowing or destroying any government in the United States by force or violence, * * *;
* * *

"(3) to organize * * * any society, group, or assembly of persons who teach, [or] advocate, * * * the overthrow or destruction of any government in the United States by force or violence; * * *.

"(b) For the purposes of this section, the term 'government in the United States' means the Government of the United States, the government of any State, Territory, or possession of the United States, the government of the District of Columbia, or the government of any political subdivision of any of them." 18 U.S.C.A. § 10 [Now § 2385].

"Sec. 3. It shall be unlawful for any person * * * to conspire to commit, any of the acts prohibited by the provisions of this title." 18 U.S.C.A. § 11 [Now §§ 2385, 2387].

The indictment reads as follows:

The Grand Jury charges:

1. That from on or about April 1, 1945, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of New York, and elsewhere, William Z. Foster, Eugene Dennis, also known as Francis X. Waldron, Jr., John B. Williamson, Jacob Stachel, Robert G. Thompson, Benjamin J. Davis, Jr., Henry Winston, John Gates, also known as Israel Regenstreif, Irving Potash, Gilbert Green, Carl Winter, and Gus Hall, also known as Arno Gust Halberg, the defendants herein, unlawfully, wilfully, and knowingly, did conspire with each other, and with divers other persons to the Grand Jurors unknown, to organize as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow

and destruction of the Government of the United States by force and violence, and knowingly and wilfully to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence, which said acts are prohibited by Section 2 of the Act of June 28, 1940, Section 10, Title 18, United States Code Annotated [Now § 2385], commonly known as the Smith Act.

2. It was part of said conspiracy that said defendants would convene, in the Southern District of New York, a meeting of the National Board of the Communist Political Association on or about June 2, 1945, to adopt a draft resolution for the purpose of bringing about the dissolution of the Communist Political Association, and for the purpose of organizing as the Communist Party of the United States of America a society, group, and assembly of persons dedicated to the Marxist-Leninist principles of the overthrow and destruction of the Government of the United States by force and violence.

3. It was further a part of said conspiracy that said defendants would thereafter convene, in the Southern District of New York, a meeting of the National Committee of the Communist Political Association on or about June 18, 1945, to amend and adopt said draft resolution.

4. It was further a part of said conspiracy that said defendants would thereafter cause to be convened, in the Southern District of New York, a special National Convention of the Communist Political Association on or about July 26, 1945, for the purpose of considering and acting upon said resolution as amended.

5. It was further a part of said conspiracy that said defendants would induce the delegates to said National Convention to dissolve the Communist Political Association.

6. It was further a part of said conspiracy that said defendants would bring about the organization of the Communist Party of the United States of America as a society, group, and assembly of persons to teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and would cause said Convention to adopt a Constitution basing said Party upon the principles of Marxism-Leninism.

7. It was further a part of said conspiracy that said defendants would bring about the election of officers and the election of a National Committee of said Party, and would become members of said Party, and be elected as officers and as members of said National Committee and the National Board of said Committee, and in such capacities said defendants would assume leadership of said Party and responsibility for its policies and activities, and would meet from time to time to formulate, supervise, and carry out the policies and activities of said Party.

8. It was further a part of said conspiracy that said defendants would cause to be organized Clubs, and District and State units of said Party, and would recruit and encourage the recruitment of members of said Party.

9. It was further a part of said conspiracy that said defendants would publish and circulate, and cause to be published and circulated, books, articles, magazines, and newspapers advocating the principles of Marxism-Leninism.

10. It was further a part of said conspiracy that said defendants would conduct, and cause to be conducted, schools and classes for the study of the principles of Marxism-Leninism, in which would be taught and advocated the duty and necessity of overthrowing and destroying the Government of the United States by force and violence.

In violation of Sections 3 and 5 of the Act of June 28, 1940, Sections 11 and 13, Title 18 United States Code Annotated [Now §§ 2385, 2387], commonly known as the Smith Act. To this indictment each of the defendants has pleaded not guilty thus placing in issue each and every one of the material allegations contained in the indictment.

█ As an indictment is a rather technical document, there are one or two points which require a little explanation. You will observe that it is the first paragraph which alleges the conspiracy. While it

refers to a conspiring to organize as the Communist Party a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence and also a conspiring to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence, I charge you that but a single conspiracy is alleged. You will doubtless remember from Mr. McGohey's opening address that the prosecution has undertaken to prove that the defendants conspired to organize the Communist Party as a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government by force and violence as a mere preliminary to the second phase of this same conspiracy which has to do with the teaching and advocacy of the duty and necessity of overthrowing and destroying the Government by force and violence. Probably the prosecution could have urged me to construe the indictment as charging a single conspiracy with two separate objects or as charging two separate conspiracies, but it has not done so and the construction just given is adopted because plainly in the interest of defendants and not conceivably prejudicial to them. As there is a single conspiracy alleged, this will also simplify your labors.

Let me repeat that the crime charged is a conspiracy. The crime charged is not that these defendants personally advocated or taught the duty or necessity of overthrowing and destroying the Government of the United States by force and violence; nor is the charge that the Communist Party as such advocates or teaches such violent overthrow and destruction. The charge is that these defendants conspired with each other, and with others unknown to the Grand Jury, knowingly and wilfully to advocate and teach the duty or necessity of such overthrow and destruction and, in this connection, to organize the Communist Party as a society, group, or assembly of persons who teach or advocate such overthrow and destruction.

■ You may have noticed, however, that the statute which I read to you makes it unlawful to advocate or teach the duty or necessity of overthrowing *or* destroying the Government by force and violence and also makes it unlawful to organize any society, group, or assembly of persons who teach or advocate the overthrow *or* destruction of the Government by force and violence. It is in the disjunctive by reason of the use of the word "or." In accordance with the rules of pleading the prosecution has in the indictment charged both, by using the conjunctive "and" in the phrase "overthrow and destruction;" but it is sufficient if the evidence adduced convinces you by the required degree of proof that defendants, or any of them, conspired as alleged, to teach and advocate either the overthrow *or* the destruction of the Government of the United States by force and violence, in accordance with these instructions. Thus it may be said that the objects of the alleged conspiracy were the organizing as the Communist Party of a society, group, and assembly of persons who teach and advocate the overthrow or destruction of the Government by force and violence and the advocacy and teaching of the duty and necessity of overthrowing or destroying the Government by force and violence.

■ Now let us turn to the remaining nine paragraphs of the indictment. The conspiracy is alleged in paragraph 1. Each of the remaining nine paragraphs allege that it was "part of said conspiracy" that defendants would do various things, such as: inducing the delegates of a special National Convention of the Communist Political Association to dissolve the Communist Political Association; causing to be organized Clubs, and District and State units of the Communist Party and recruiting and encouraging the recruitment of members of that Party; and the publication and circulation of books, articles, magazines and newspapers advocating the principles of Marxism-Leninism; and so on. These paragraphs merely allege the means by which it is claimed the defendants agreed that the conspiracy was to be made effective. And so I shall charge you later that it is not necessary for the prosecution to prove that all these means were actually used or put in operation, provided that it

be established to your satisfaction by the required degree of proof that one or more of these means described in the last nine paragraphs of the indictment were agreed upon to be used to effect the conspiracy, in accordance with these instructions.

This indictment that I have read to you is merely a method by which the prosecution calls into a court of justice individuals who, it is claimed, have violated the law. It is not evidence of the guilt of the defendants nor does it detract in any degree from the presumption of innocence with which the law surrounds them until their guilt is proven. This presumption of innocence remains with them throughout the trial of the case and applies to the consideration of each of the essential ingredients going to make up the crime charged unless and until you, the jury, are satisfied beyond a reasonable doubt, from the evidence adduced by the prosecution, on whom is the burden of proof, of the guilt of the defendants as charged.

And a reasonable doubt means a doubt founded upon reason. It does not mean a fanciful doubt, or a whimsical or capricious doubt, for anything relating to human affairs and depending upon human testimony is open to some possible or imaginary doubt. When all of the evidence in the case, carefully analyzed, compared and weighed by you, produces in your minds a settled conviction or belief of a defendant's guilt, such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs, when it leaves your minds in the condition that you feel an abiding conviction amounting to a moral certainty of the truth of the charge, then, and in that event you would be free from a reasonable doubt. Absolute or mathematical certainty is not required but there must be such certainty as satisfies your reason and judgment, and such that you feel conscientiously bound to act upon it.

A conspiracy may be defined as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself unlawful or criminal, by criminal or unlawful means. The gist of the offense is the unlawful combination or agreement to violate the law. As Justice Holmes said many years ago: "A conspiracy is a partnership in criminal purposes."

However, it is not necessary in order to constitute a conspiracy that two or more persons should meet together and enter into an explicit or formal agreement for an unlawful scheme, or that they should directly, by words or in writing, state what the unlawful scheme was to be, and the details of the plan or means by which the unlawful scheme was to be made effective.

It is sufficient if two or more persons, in any manner, or through any contrivance, impliedly or tacitly, come to a mutual understanding to accomplish a common and unlawful design, knowing its object. In other words, where an unlawful end is sought to be effected and two or more persons, actuated by the common purpose of accomplishing that end, knowingly work together in any way in furtherance of the unlawful scheme, every one of said persons becomes a member of the conspiracy, although his part therein be a subordinate one, or be executed at a remote distance from the other conspirators. All the conspirators need not have originally conceived the conspiracy, or participated in its conception. Those who come in later, with knowledge of the aims and purposes of the conspiracy, and cooperate in the common effort to attain the unlawful results become parties thereto. A conspiracy is not ended as long as the evidence shows an intention to continue it. Each alleged conspirator who was the agent of the others at some time during the life of the conspiracy remains an agent during all of its existence, except that a conspirator has the right to withdraw from the execution of the conspiracy, but it requires affirmative and effective action thus to withdraw and terminate his liability in the conspiracy. It is a principle of law that a condition once shown to exist continues until a different situation is shown.

■ Persons may be guilty of being parties to a conspiracy though the objects of the conspiracy were never accomplished. On the other hand, proof concerning the accomplishment of the objects of a conspiracy is the most persuasive evidence of the existence of the conspiracy itself. The agreement is generally a matter of inference deduced from acts of the persons accused done in pursuance of an apparent criminal purpose.

■ You are further instructed that where several persons are proved to have combined together for the same illegal purpose, any act or declaration made by one of them during the pendency of the illegal enterprise, and in furtherance of the common objects, is not only evidence against himself but is evidence against the other conspirators, who, when the combination is proved, are as much responsible for such declarations and acts as if made and committed by themselves, because each is deemed to assent to or command what is done by any other in furtherance of the common objects.

It is not incumbent upon the prosecution to prove that all of the means set out in the indictment were, in fact, agreed upon to carry out the conspiracy, or that all of them were actually used or put into operation. It is sufficient if it be established to your satisfaction, and beyond a reasonable doubt, that one or more of the means described in the indictment was agreed upon to be used to effect the conspiracy.

With these general principles as a guide you will approach the important question of whether the prosecution has proved beyond a reasonable doubt the existence of the conspiracy alleged in the indictment, and if such a conspiracy did exist, whether the defendants or any of them were parties to it and whether such defendants entered it with knowledge of its nature and purposes. It will be well for you to take up and consider separately the evidence as it relates to each defendant on trial.

■ You must first determine from all the evidence in the case, relating to the period of time defined in the indictment, whether or not a conspiracy existed. If you decide that a conspiracy did exist, you must next determine, as to each defendant, whether or not he was a member of the conspiracy. In considering whether or not a particular defendant was a member of the conspiracy, you must do so without regard to and independently of the statements and declarations of others. In other words, you must determine the membership of a particular defendant from the evidence concerning his own actions, his own conduct, his own declarations, or his own statements, and his own connection with the actions and conduct of others. However, once you have determined that a defendant was a member of the conspiracy, using this test, you may then consider as if made by him the statements and declarations of other co-conspirators, made in furtherance of the conspiracy and during the existence thereof as alleged.

There has been testimony in the case of acts and declarations by persons, for example, instructors and party functionaries, who are not named in the indictment as defendants. However, the indictment does refer to co-conspirators unknown to the Grand Jury. If you find that the conspiracy charged in the indictment existed and that any of these persons acted on behalf of the defendants and in furtherance of the conspiracy, then those persons are co-conspirators and their acts and declarations are binding on whatever defendants you find to have been members of the conspiracy.

I may explain this in a different way. First, you will recall that as to every material fact the prosecution has the burden of proving such fact to your satisfaction beyond a reasonable doubt. Let us assume then, for the purposes of argument only, and merely by way of hypothetical illustration, that after deliberating together you are convinced beyond a reasonable doubt that a conspiracy existed and that the defendants or some of them were parties to it and you come to the question of whether or not you should consider as binding upon such defendants the testimony of one of the prosecution witnesses to the effect that Mr. or Miss So-and-So, claimed to

have been one of the instructors in one of the Communist Party schools, had said thus and so about the dictatorship of the proletariat and how it would be brought about by Communists in the United States of America. Before you could consider this evidence against the defendants or any of them you would have to be convinced beyond a reasonable doubt that the instructor in question was a member of the conspiracy, with knowledge of its aims and purposes, and that the teaching in question was during the period of the indictment and in furtherance of the aims and purposes of the conspiracy. For, as I have explained a moment or two ago, if you are convinced beyond a reasonable doubt that there was a conspiracy to organize a society, group, and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence, and if you are convinced beyond a reasonable doubt that one or more of the defendants knowingly were parties to such conspiracy, you may consider the acts and statements of co-conspirators, engaged in the same enterprise, and done or said in furtherance of the conspiracy and in the time specified in the indictment, just as though such statements and acts were said and done by the defendant or defendants who were found by you to be members of the conspiracy. Accordingly, before considering as binding on said defendants such testimony as I have above described, it would be necessary for you also to be convinced beyond a reasonable doubt that the instructor in question was in fact a co-conspirator, with knowledge of the aims and purposes of the conspiracy, and that the teaching he or she was said to have done was within the period of the indictment and knowingly in furtherance of the aims and purposes of the conspiracy. In this connection you will recall what I have already told you that all the conspirators need not have originally conceived the conspiracy or participated in its conception. Everyone coming into a conspiracy, with knowledge of its aims and purposes, is as much a co-conspirator as though in it from the beginning, in the absence of some affirmative action to effect a withdrawal from the conspiracy.

Now do not go off on a tangent and get confused about these instructors or party functionaries or anyone else, not named in the indictment, whom you may find to be a co-conspirator. You are not called upon to name any of these persons in your verdict or to pass upon their guilt or innocence in any way. No charge against them of violating the criminal laws of the United States is before you for determination. The sole question before you is whether these defendants, named in the indictment which I have read to you, are guilty of the charge laid against them. Your only task is to determine whether they or any of them are guilty as charged. If the evidence points to the guilt of any person or persons not named in the indictment and not on trial before you, you are in no sense to consider such evidence except insofar as it bears upon the question of the guilt or innocence of the defendants or any of them, in accordance with these instructions.

In conspiracy cases there is necessarily considerable latitude of admissible evidence, so that some of the testimony may be applicable to one but not to the others of the defendants on trial. During the course of the trial certain evidence was received concerning acts, declarations and teachings of various of the defendants during the period prior to April 1, 1945, the initial date of the conspiracy alleged in the indictment. As I have told you, you must be satisfied beyond a reasonable doubt that the defendants wilfully conspired, during the period April 1, 1945 to July 20, 1948, to accomplish the two objectives which are charged in the indictment and which I have previously mentioned. The evidence which has been received relating to the period prior to the conspiracy should be considered by you only in determining the intent of the defendants concerned and in determining whether they contemplated that the overthrow or destruction of the Government by force and violence would be taught during

the period from April 1, 1945 to July 20, 1948. You may not consider such evidence in determining the intent of any other defendant to commit the offense charged, or for any other purpose.

Government's Exhibit No. 3, the "Program of the Communist International," was originally received against the defendant Stachel only. Thereafter, evidence was admitted that this Program was the subject of teaching in a Party School and was quoted from or referred to in one or two of the outlines distributed after April 1, 1945. If you are satisfied by the required degree of proof that the Program was so used after April 1, 1945, you may consider it not only as bearing upon the intent of the defendant Stachel but also on the issue of the existence of the conspiracy as alleged.

For two or more persons to conspire, confederate or combine together to commit or cause to be committed a breach of the criminal law of the United States is an offense of grave character which involves not only a plotting to subvert the law, but also the preparation of the conspirators for further criminal practices. It is almost always characterized by secrecy, rendering detection difficult and requiring much time for its discovery. Because of this the statute has made a conspiracy to commit a crime a distinct offense from the crime itself. From the point of view of the law there is danger to the public when two or more people conspire to do something that is unlawful because by virtue of the aggregation of numbers the intent assumes a more formidable disadvantageous aspect to the public.

For your guidance and assistance, I shall now briefly discuss the contentions of the prosecution and those of the defendants relative to the proofs adduced by each and instruct you on the rules of law which will govern your deliberations in passing upon the credibility of the witnesses who have testified on behalf of one side or the other.

Before I do this I wish to emphasize again that you are the sole judges of the facts. In a case such as this, with hundreds of exhibits and many thousands of pages of testimony it is impossible for me to attempt any complete and satisfactory summary. Therefore, I solemnly tell you that the brief statement which I shall make concerning the contentions of the parties is merely by way of passing remark to help refresh your recollection and get you started on your deliberations. It is solely your function to determine not only what testimony was given and by whom, but also to determine the relative importance or lack of importance of the vast number of details with which the case is replete. The circumstance that I mention some of these and omit others must not be taken as an indication that I have any opinion with respect to the guilt or innocence of the defendants, or any of them, or any opinion to the effect that one phase of the case is of more importance than another. It is for you alone to determine what evidence you will believe and what weight you will give it, in accordance with these instructions.

But I can help to eliminate certain matters which are not in issue. Books are not on trial here nor are you concerned with the philosophical validity of any mere theories. It is not your function to pass upon the relative merits of communism or capitalism or any other issue. You are concerned with the intent of these defendants and what these defendants, and any other persons with whom you may find they conspired in accordance with the rules already stated, did and said. The books, pamphlets and so on come into the case only to the extent that you may be satisfied beyond a reasonable doubt that these books and pamphlets were used by the defendants, and those conspiring with them, if there be any such, as instruments, apparatus or paraphernalia for the propagation of teaching and advocacy of the overthrow or destruction of the Government by force and violence.

Nor will you be called upon to decide any of the miscellaneous matters injected into the case by counsel for the defendants and received by me on the theory that they could not satisfactorily show that the defendants at no time organized or conspired to organize as the Communist

Party of the United States of America a society, group and assembly of persons who teach and advocate the overthrow or destruction of the Government by force and violence and taught or advocated, or conspired to teach or advocate, the overthrow or destruction of the Government by force and violence, without showing, to a reasonable extent, what they claim that they did teach and advocate. I have taken great pains during the trial to keep the real issues clearly before you, lest confusion and injustice to one side or the other might result. And so I charge you now that questions or issues relative to the grievances of young people, trade unions, farmers, working people in general, veterans, or housewives, or Jim Crow, lynching and the like, discrimination based upon race, creed or color and so on are not before you for determination. You must be scrupulously careful to see to it that the testimony on these subjects does not attract your minds away from the real issues as clearly defined in these instructions, or stir up emotions and sympathies which may make it difficult for you to consider the real issues and the evidence carefully, calmly and dispassionately, without the slightest trace of sympathy or prejudice for or against any party to the proceeding, as I have already charged you to do. The same is true about the utterances of defendants, as contained in the proofs, on the subjects of the wisdom of the Marshall Plan, the withdrawal of American troops from China, the war in Spain and similar subjects.

It is perfectly lawful and proper for the defendants or anyone else to advocate reforms and changes in the laws, which seem to them to be salutary and necessary. No one has suggested that the defendants transgressed any laws by advocating such reforms and changes. No syllable of the indictment refers to any such matters. Furthermore, should you find from the evidence that the defendants organized or helped to organize and assumed or were given leadership in the Communist Party as a legitimate political party solely with the veiw of electing candidates to political office by lawful and peaceful means and

advocating reforms and changes in the laws or the adoption of policies by the Government favorable to their contentions in the matters just referred to, you must render a verdict of not guilty. And, even if you do not so find from the evidence, you cannot bring in a verdict of guilty against any defendant unless the prosecution has satisfied you of his guilt beyond a reasonable doubt, in accordance with these instructions.

Put the other way around and more succinctly, I charge you that if you are satisfied beyond a reasonable doubt that the defendants, or any of them, wilfully conspired to organize a society, group, and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence, and to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence, in accordance with these instructions, it is immaterial that they may also have contemplated the teaching and advocacy of other matters, such as rent control, civil rights legislation, or any other subject.

█ I need not remind you that the case bristles with issues of veracity. In instances too numerous to specify the testimony of witnesses called by the prosecution is flatly contradicted by the testimony of witnesses called by the defendants. It is your function and yours alone to decide where the truth lies, remembering always that the prosecution has the burden of proof and this burden, as I have already told you, is that of satisfying you beyond a reasonable doubt as to each essential ingredient of the crime charged.

The prosecution claims that the defendants conspired together and with others to organize as the Communist Party of the United States of America a society, group and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and to teach and advocate the duty and necessity of overthrowing or destroying the Government of the United States by force and violence; that defendants as part and parcel of the conspiracy

sought to mask their purposes by pretending that they were fighting always and solely for democracy and the interests and welfare of the workers and to bring about salutary reforms and even socialism as a goal to be reached in the nebulous future, all by straightforward, peaceful and strictly lawful means, whereas in truth and in fact they resorted to many clandestine and fraudulent devices in teaching those subject to their influence secretly to prepare for the coming of some crisis, such as a deep depression or a war with the Soviet Union, to spring into action when the word of command was given, to paralyze power houses, the transportation system and the vast industrial machine at the heart of our economic system and in the resultant chaos and confusion to bring about, by violent and unlawful means, the overthrow or destruction of the Government and the establishment of the dictatorship of the proletariat. To this end, according to the contentions of the prosecution, under circumstances involving some communication from Dimitri E. Manuilsky, a delegate of the Ukranian S. S. R. to the United Nations Conference at San Francisco, and an article by Jacques Duclos, a leading French Communist, the Communist Political Association was dissolved, Browder's policy of the peaceful collaboration of the classes, or revisionism, was repudiated and the Communist Party was reconstituted, and an elaborate and far-reaching network of schools and classes established for the propagation of the Marxist-Leninist principles of the overthrow or destruction of the Government by force and violence. The prosecution further contends that Æsopian language, only understood by Communists thoroughly indoctrinated in the use of such verbiage, was used in their Constitution of 1945 and elsewhere, and that defendants also habitually used in their writings and teaching a species of double-talk which they used to convey one meaning to themselves and their followers, but which would be otherwise understood by the uninitiate and the public at large; that a rigid system of party discipline was rigorously enforced, hedged about with the appearance of prolonged democratic discussion, amendments of resolutions and so on, to becloud the fact that this discipline was enforced from above and with the active cooperation of the defendants themselves; that deliberate lying and false swearing were condoned and even encouraged, when the needs of the Communist Party so required; that the use of false names, the destruction of membership books or cards and various other secret and devious devices were resorted to; that plans were deeply laid to place energetic and militant members of the Communist Party in key positions in various industries indispensable to the functioning of the American economy, to be ready for action at a given signal; and that such action was to consist of strikes, sabotage and violence of one sort or another appropriate to the consummation of the desired end, that is to say the smashing of the machine of state, the destruction of the army and the police force and the overthrow of the Government and what Communists call "bourgeois democracy."

The prosecution further claims that the process of indoctrination at these various schools and classes was sought to be accomplished by the defendants by: (1) a persistent and unremitting playing upon the grievances of various minority groups such as young people, veterans, Negroes, housewives, Jews and those suffering from economic handicaps of one sort or another —rubbing salt into these wounds and doing their best to arouse and inflame antagonisms between various segments of the population; (2) by insistence that the Communist Party alone is qualified to assume and to retain leadership of the revolutionary movement for the smashing of the capitalist state machine, and the ushering in of the dictatorship of the proletariat, and that accordingly Communists must at all times maintain what they call their Vanguard Role and the elimination at all times of others who claim to be seeking by various means to attain the same or similar ends; (3) by constant study and discussion of the steps by which the Communists came to power in the Soviet Union, including the details of the revolution of October, 1917, in Russia, the strategy and tactics followed,

including the wearing by the workers of uniforms of the Russian soldiers and sailors, the street fighting and so on; (4) by constantly stressing their claim that capitalism during the period of time specified in the indictment was on its last legs, or moribund, that the dictatorship of the proletariat was inevitable, that the workers should hate the capitalist system and their employers, and the army and the police as mere instruments of Wall Street monopolists and exploiters, who are said to hold the Government of the United States in their clutches; (5) by picturing the Government of the United States as imperialistic and tending toward fascism and the Soviet Union as the protector of the rights of minorities, the only true and complete democracy and as dedicated to peace; (6) by inculcating the doctrine that a war with Russia would be an imperialistic and an unjust war, in which event it is said to be the duty of those subscribing to defendants' principles to turn the imperialistic war into a civil war and fight against their own government, meaning the Government of the United States.

It is the further claim of the prosecution that defendants, during the period specified in the indictment, did and said what they did, and what it is claimed that the evidence, testimonial and documentary, shows that they did, with the specific intent and purpose of overthrowing or destroying the Government of the United States by force and violence, and doing so at the earliest time that circumstances would permit.

On the other hand, the defendants' version in this case is as different as white from black. The two versions of the facts are utterly irreconcilable. Thus defendants deny that they or any of them ever conspired among themselves or with anyone else to organize as the Communist Party of the United States of America a society group and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence or to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence; they deny that there was at any time anything furtive

or deceptive about any of their acts or writings and they assert, on the contrary, that their very principles as Communists forbid them to conceal their aims and purposes from the people and that they have taught openly and for a long time the peaceful principles of Marxism-Leninism as they understand them to everyone they could induce to listen to them or to read their writings.

The defendants characterize as "unmitigated bunk," and as a vicious libel, the charges levelled against them and to some extent summarized by me in the foregoing instructions. They claim that the whole prosecution is based on a "frame-up," supported by the testimony of Government agents whom defendants describe as stool pigeons. It is charged that these agents and certain of the F.B.I. men who also testified against defendants and others, such as the witness Budenz, wilfully perjured themselves and that their testimony is a tissue of lies made up out of whole cloth.

They assert that at least Dennis and Green backed up Foster in his opposition to the dissolution of the Communist Party and the formation of the Communist Political Association in 1944 and that the elimination of the Communist Political Association and the reconstitution of the Communist Party of the United States of America in 1945 were in no respect due to any orders from abroad or elsewhere but, on the contrary, were the result of spontaneous and growing criticism of Browder's policies, springing from the ranks of the Party, as a result of general dissatisfaction with revisionist and opportunist views, which it was widely thought would wreck the Party and perhaps, if continued, render wholly unattainable the ultimate goal of socialism. They point to Foster's letter of January 20, 1944, and the views which he pressed upon the members of the National Committee, and Foster's position of leadership in the Party, as demonstrating that the Duclos article merely helped to bring things to a head. They further assert that, while the Communist Political Association was still in existence, and long before its dissolution, the course of events had begun

to demonstrate that Browder was wrong; that capital revealed itself less cooperative than Browder had anticipated, that the unity of the wartime allies had weakened and the United States and Great Britain had begun to show signs of adopting an imperialistic and unjustifiable anti-Soviet attitude; that, accordingly, when the Duclos article appeared, members of the Communist Political Association were receptive to its criticisms, since these criticisms accorded with their own developing experience; and that thereupon as a result of a reappraisal of party policies arrived at in a frank and democratic manner, it was decided in open convention that the policies of the Communist Political Association during the 1944–45 period were a revision of Marxism, and the Communist Party was reconstituted; that the Communist Party was then set up with its various subdivisions, and the defendants were elected, at the times indicated by the evidence, to positions of leadership in it; and that they took part in disseminating party literature and supervising its dissemination, teaching and advocating party principles, and in setting up and supervising schools and classes for the teaching and advocating of party principles.

Now do you think this is a good time for a little recess?

"The Jurors: Yes.

"The Court: We will take a ten-minute recess." (Short recess.)

"The Court: The defendants assert that they regard the establishment of socialism in this country as necessary if the people are to live in peace and prosperity; that all their activities are directed toward the ultimate establishment of socialism, and take two major forms which interact with and influence each other; the political and the educational.

Their political activities, they contend, stem from their belief that the people of the country can attain socialism in a legal and democratic way, in spite of the opposition of the capitalists, but that socialism can never be achieved, no peace or freedom at all is possible, if the manifestations of reaction and fascism which

the defendants discern continue unchecked, and the power of the trusts and monopolies continues to increase. Therefore the immediate problem, according to the defendants, is to overcome the warmongers and the powers of reaction. This the defendants say they have attempted to accomplish by organizing or attempting to organize the broadest kind of national coalition of anti-facist and democratic forces, with strong emphasis placed upon the independent role and initiative of the working class and especially the progressive labor movement and Communists. This coalition, according to the defendants, is a political coalition consisting of the workers, the Negro people, small farmers, the city middle class, small shopkeepers, small income professionals, intellectuals and even those of the capitalist class who desire to fight against war and fascism and in favor of peace, freedom and security.

They assert that the purpose of this broad coalition is to elect a Democratic and People's Front Government, such as was elected in Poland, Czechoslovakia, Hungary and Rumania, and that this would only come about if and when a majority of the people wanted it and were ready to struggle for it. Thus they say that their political activities are directed toward inducing the electorate to bring such a People's Front Government to power by peaceful democratic means on the basis of a program of democratic demands; and that when such a People's Front Government is in power and is able to curb the warmongers, monopolists and other forces of reaction, the people will then desire to move toward socialism, and, by peaceful democratic means, will do so.

Hand in hand with the political activities of the defendants go their educational activities, for they assert that the people will be unable to appreciate their political program unless they understand the principles which actuate it and see how the application of these principles will solve the problems that beset them. As Mr. William Z. Foster testified in his deposition, which was read to you:

"The Communist Party proceeds upon the practical assumption that the question of socialism in the United States is now in the educational stage; that is, that it is a question of teaching the masses the necessities for socialism or the inevitability of socialism and the means for bringing about socialism."

The defendants contend that they engage in these political and educational activities in order to benefit the masses of the American people, and to preserve and extend American democracy. They contend that their activities on behalf of the poor and oppressed, as well as in support of liberal legislation, and their opposition to all discriminatory and reactionary policies, show that they can have no such intent as is necessary to support the charge in the indictment.

The defendants deny that the principles of Marxism-Leninism, as taught by them, have anything to do with the overthrow or destruction of the Government of the United States by force and violence. These principles as taught by them, they assert, form a unified whole, and are a true social science.

According to some of the testimony introduced on behalf of defendants, there was taught the principle of the class struggle. This principle is said to be that the workers and farmers and other segments of the population are engaged in a constant struggle with the capitalists, since the capitalists seek to exploit them, and they naturally resist. There also was taught the principle of the increasing crisis of capitalism, which is said to be that capitalism all over the world, by its very nature sinks into deeper and deeper crisis, with ever-widening circles of economic distress; that the capitalists, seeking to preserve their tottering dominion, intensify the class struggle and increase their exploitation of the mass of the people.

The defendants contend that socialism is the only solution to the crises of capitalism, and assert they engage in the political and educational activities which I have already mentioned, looking first toward the establishment of a broad democratic coalition to restrain the abuses of the reactionary cap-italist class which has been goaded to desperation by the deepening crises of capitalism, and then toward the eventual establishment of socialism.

The defendants assert that they do not believe in and do not teach the use of force and violence to gain their ends. They contend that the capitalist class uses force and violence to prevent the transition to socialism, and that they justified the use of force and violence only as a method of preventing an attempted forcible overthrow of a succeeding government which had obtained control in a peaceful manner, or as a method of last resort to enforce the majority will if, at some indefinite future time, because of peculiar circumstances, constitutional or peaceful channels were no longer open. But as long as the peaceful electoral paths are open, the defendants assert that they can meet the reactionary class at the polls and defeat them peacefully.

It is manifestly not possible for me to give any complete summary of what was taught in the various Communist Party schools, according to the witnesses called by defendants. But I shall try to refer to some of these teachings which, according to my recollection, these witnesses seemed particularly to emphasize. Thus they say that the Marxist-Leninist principles taught in these schools are adaptable in various ways to a variety of historical conditions, that they cannot be applied dogmatically. Lenin showed, the defendants contend, that the capitalist system has developed in an uneven manner in various countries, that the contradictions and crises of capitalism, and imperialism, the final stage of capitalism, have all manifested themselves differently in different countries throughout the course of the late 19th and early 20th Centuries, and that therefore the transition to socialism has occurred and will occur in different ways, based upon the unique situations at a given time and place.

Thus the defendants warn against a mechanical transference of the experience of the Russian October Revolution of 1917 to the situation now prevalent in this country. The fact that socialism came to Russia in the form of soviets following a violent rev-

olution does not mean the same will happen here. The notion that the October Revolution of 1917 in Russia can be used as a "blueprint" for any changes in the American political or social system, the defendants assert, is in flat contradiction of their teachings to the contrary.

With respect to the slogan "turn the Imperialist War into a Civil War," the testimony on behalf of defendants is to the effect that the reference to this slogan was by way of an explanation of its use in specific historical contexts and that the use of such slogan was not for the purpose of teaching or advocating the duty or necessity of converting a prospective imperialist war between the United States and the Soviet Union into a civil war.

One of their teachings which they say is axiomatic is that the constant interaction between theory and practice is itself a principle of Marxism-Leninism as propounded in their elementary as well as advanced and leadership schools. Thus it is possible for their day-to-day political and educational approach to vary, depending on the particular problems that have to be faced. Hence they say that prior to 1935 the issue was socialism against capitalism, although, as I understand it, every witness for the defense who was questioned on the subject vigorously asserted that at no time, prior or subsequent to 1935, did they teach that the Government of the United States or any government was to be overthrown or destroyed by force and violence in order to usher in socialism. They further say, according to Mr. Foster, that the People's Front policy about which I spoke a few moments ago, began to take shape at the 7th World Congress of the Comintern in Moscow in 1935, and that the development of this new policy had the effect of rendering obsolete many of the books about which Mr. Foster and others were questioned by the prosecution.

In this connection defendants refer to Article XIV, Section 1, of the 1945 Constitution of the Communist Party, which provides:

"The Communist Party is not responsible for any political document, policy, book, article or any other expression of political opinion except such as are issued by authority of this and subsequent conventions and its regularly constituted leadership."

And so Mr. Winter, one of the defendants here on trial, testified that in his address to the 1945 Convention, he said:

"It was not a program for socialism. It was a program for the strengthening of the forces of democracy in our country to save our country from the menace of fascism and thus to lay the foundation for the majority of the American people winning government power through the free exercise of their choice."

Finally, as negativing the claim that defendants conspired to organize a society, group, and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence, defendants point to Article IX, Section 2, of the 1945 Constitution of the Communist Party, which reads as follows: "Adherence to or participation in the activities of any clique, circle, faction or party which conspires or acts to subvert, undermine, weaken or overthrow any or all institutions of American democracy, whereby the majority of the American people can maintain their right to determine their destinies in any degree, shall be punished by immediate expulsion."

From this brief recital of the contentions advanced on behalf of the defendants you can see how completely irreconcilable are the versions of the facts presented by the prosecution on the one hand and the defendants on the other. And so this seems to be an appropriate time for me to amplify somewhat my statement, at the outset of these instructions, that you are the sole and exclusive judges of the facts.

No matter how careful a judge may be to avoid it, there is always the possibility that the jury or some particular juror may get an impression that the judge has some opinion with reference to the guilt or innocence of the defendants, or that he thinks that some particular phase of the case is

more important than another, or that some particular witness is more credible than another or that a certain inference of fact should or should not be made and so on. If you have formed any such impression you must put it out of your mind and utterly disregard it. Nothing I have said during the trial nor in these instructions was intended to give any such impression; nor were any remarks or questions addressed to any of the witnesses or to counsel so intended. On the contrary, I have been scrupulously careful to avoid any comment which might even remotely suggest that I considered the subjects of the weight of testimony, the credibility of witnesses, the inferences to be drawn or the relative importance of one segment of the evidence as against another, or the determination of the guilt or innocence of the defendants, as coming within the orbit of my functions as the presiding judge in this trial. Despite the power which a federal judge has to comment on the evidence, provided he unequivocally leaves the determination of the facts to the jury, I have refrained from any such comments in these instructions and during the trial, lest, by reason of the extreme length of the trial and the large number of witnesses and exhibits, my comments might be misunderstood. And so I tell you again, you are the sole and exclusive judges of the facts of this case; you, and you alone, will pass upon the credibility of all the witnesses, including the credibility of those defendants who testified, all in accordance with instructions on that subject which I shall give you later. Despite anything said by me or by counsel, your recollection of the testimony must prevail whenever your recollection differs from what I have said or what counsel for either side have said in argument or otherwise; it is for you to determine what the proofs adduced by both sides disclose, regardless of anything said by me in the brief and necessarily incomplete summaries which I have given you of the contentions of the parties; and it is for you and you alone to weigh the proofs, draw such inferences of fact therefrom as you determine should be drawn and to decide each and every one of the issues of fact in the case.

By the same token and by virtue of principles of law equally fundamental to American jurisprudence, you must decide these facts solely upon the basis of the exhibits received in evidence and the testimony given from the witness chair. Arguments of counsel are entitled to respectful consideration, but arguments and statements of fact by the lawyers for either side are not evidence. This includes arguments by the defendant Dennis, who was his own lawyer throughout the trial. Nothing said by him from the beginning of the trial down to this very moment constitutes evidence of any fact or circumstance involved in the case. For the same reason, you must utterly disregard and put out of your minds all testimony stricken by me, and all evidence offered and rejected.

I have already told you not to read anything about the case in the newspapers or listen to the radio about it, and now, in what may seem an excess of caution, I tell you that you must not consider, in your determination of the guilt or innocence of these defendants in accordance with these instructions, anything you may ever have read or heard other than the exhibits and testimony received and given in this courtroom. And when I say "anything" I mean it in the fullest sense of the word. This includes anything you may have read about this case or any other case. Newspapers, radio, movies, television, what people generally may think, and what you yourselves may ever have thought, about communists or communism or the Soviet Union, all this is out. What views the public or public officials of every name, nature and description may or may not entertain on these subjects have absolutely nothing to do with the case. Do not permit any extraneous matters affecting race or religion or color or anything else affect you one iota. You must concentrate on the evidence to the complete exclusion of everything else. For this reason you are also to make quite sure that you are not in any manner affected by the nature of the charge made against these defendants. You are to consider the evi-

dence bearing on this charge of conspiring to organize a society, group, and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence, just as you would consider the evidence bearing on any other charge of committing a crime against the laws of the United States; and the government here must be considered in no different light than any other litigant who pleads for justice; and counsel for the government must be considered in no different light than counsel for the defendants or for any other litigant. What the case requires, and what every case in this or any other American court requires, is calm, cool, deliberate consideration of the evidence. Then, when in accordance with these instructions, you find the true facts and apply the law, return a just and true verdict, no matter whom it hurts. The law does not permit jurors to be governed by conjecture, passion or prejudice, public opinion or public feeling.

 The fact that any defendant, who has a right so to do, has not seen fit to testify in this case cannot be considered by you as any evidence against him or against any of the other defendants, or as a basis for any presumption or inference unfavorable to him or to them. You must not permit such fact to weigh in the slightest degree against any defendant, nor should it enter into your discussions or deliberations. The prosecution must prove defendants guilty by the required degree of proof as explained in these instructions. They are not required under our law to establish their innocence.

 And so we come to one of the crucial questions in the case. By what yardstick and in accordance with what rules of law are you to judge the credibility of the witnesses, including that of the defendants who offered themselves as witnesses.

This judging of testimony is very like what goes on in real life. People may tell you things which may or may not influence some important decisions on your part. You consider whether the people you deal with had the capacity and the opportunity to observe or be familiar with and to remember the things they tell you about. You consider any possible interest they may have, and any bias or prejudice. You consider a person's demeanor, to use a colloquial expression, you "size him up" when he tells you anything; you decide whether he strikes you as fair and candid or not. Then you consider the inherent believability of what he says, whether it accords with your own knowledge or experience. It is the same thing with witnesses. You ask yourself if they know what they are talking about. You watch them on the stand as they testify and note their demeanor. You decide how their testimony strikes you.

Take the matter of interest, for example. You may feel that some of the witnesses, whether for the prosecution or the defense, have an interest in the outcome of the case. Where a witness has a strong personal interest in the result of the trial the temptation may be strong to color, pervert, or withhold the facts. Or with all the honesty in the world a witness who has an interest in the case may unconsciously shade his testimony. On the other hand, such a witness may be telling the exact truth, despite his interest in the outcome. You must consider all the attendant circumstances in deciding whether and to what extent interest has affected the witness.

The greater a person's interest is in the case, the stronger is the temptation to false testimony, and the interest of the defendants who took the stand is of a character possessed by no other witness. Manifestly they have a vital interest in the outcome of the case. This interest is one of the matters which you may consider along with all the other attendant circumstances in determining the credence you will give to their testimony. Here again you may find that a defendant is telling the exact truth despite his obvious interest in the outcome.

What I have said concerning the interest of any witness applies with equal force to the matter of bias and prejudice. Where you find that any witness, whether called by the defense or by the prosecution, has any

bias or prejudice for or against any of the parties, or for or against Communists or Communism, you will consider whether and to what extent such bias and prejudice has affected his testimony. Here again you must consider such bias and prejudice, where you find that it exists, in connection with all the attendant circumstances.

You will accordingly observe that, before reaching any conclusion as to whether or not you will believe the testimony of any particular witness, or as to whether you will believe part of the testimony of a particular witness and reject the rest, it is of the essence that you give consideration to all the circumstances bearing on the question of the credibility of the particular witness, as I have just indicated. For this reason you must be careful not to act in an arbitrary manner. Thus you are not at liberty arbitrarily to say that simply because a witness happens to be an F. B. I. agent, an informer, a present or former member of the Communist Party or a Communist official or functionary or a defendant or other witness falling into one category or another, or because a witness is called by the prosecution or by the defendants, he or she is therefore more than usually credible or less than usually credible. Credibility cannot be determined by any such rule of thumb.

 While you are not at liberty to reject the testimony of a witness arbitrarily, there are occasions when you may be justified in rejecting it in toto. The law has a rule with a Latin name, "falsus in uno, falsus in omnibus," which applies to these occasions. It is: if you find that a witness wilfully falsely testified to a material fact, you are privileged to reject all his testimony, or if you elect to do so you could believe part of it and accept that part of it which appealed to your reason, or which was corroborated by other credible evidence and reject the rest. It is the application of what we do every day, that when a person tells you a lie about an important matter you may say, "Well, I will never believe him again," or you may say, "some of the things he told me I will accept because they jibe with everything else in my experience, or because they are corroborated by what I am told by someone whom I believe, but where that is not so I won't accept his testimony." So here if you find a witness cannot be trusted to observe his oath in one particular, you may say that you cannot believe or trust him in any other particular.

In this connection, I charge you that a material fact includes a fact bearing on the credibility of the witness, as well as those bearing directly on the issues in this case. Facts going to the credibility of a witness who has given material evidence are facts within this rule, and if you find that any witness has wilfully falsified with respect to any fact going to his credibility, you may disregard his entire testimony in accordance with the falsus in uno, falsus in omnibus rule with respect to which I have just given you instructions.

 Some of the witnesses refused to answer certain questions. You may consider these refusals in connection with the credibility of these witnesses and the weight you will give to their testimony. Witnesses —and by witnesses I again mean always to include the defendants who offer themselves as witnesses—are required to answer relevant and material questions unless the court sustains some claim of constitutional privilege and rules that the witness need not answer. Defendants need not take the stand at all, as I have told you. But if they elect to testify in their own defense, they must answer questions like any other witness. So wherever a witness thus refuses to answer questions put to him, you may take that refusal into consideration along with all the other attendant circumstances, unless the court has ruled that his refusal to answer is legally justified.

 This brings me to another and a very important phase of this case. Among the most vital and precious liberties which we Americans enjoy by virtue of our Constitution are freedom of speech and freedom of the press. We must be careful to preserve these rights unimpaired in all their vigor.

Thus it is that these defendants had the right to advocate by peaceful and lawful means any and all changes in the laws and in the Constitution; they had the right to criticize the President of the United States

and the Congress; they had the right to assert that World War II, prior to the invasion of Russia by Germany, was an unjust war, an imperialist war and that upon such invasion it became a just war worthy of all material and moral support; and they had the right publicly to express these views orally and in writing. They had the right thus to assert that the government was at all times exploiting the poor and worthy workers for the benefit of the trusts and monopolies. They had a right thus to assert that what they call the democracy of Russia is superior in all respects to American democracy. They had a right thus to assert that the Marshall Plan was a mistake, that billions of dollars should be loaned to Russia and that legislation adversely affecting Communists should not be passed. Whether you or I or anyone else likes or dislikes such or similar and analogous views or agrees or disagrees with them is wholly immaterial and not entitled to the slightest consideration in deciding this case. Unless a minority had a right to express and to advocate its views, the democratic process as we understand it here in America would cease to exist and those in power might remain there indefinitely and make impossible any substantial changes in our social and economic system or in the texture of our fundamental law.

I charge you that if the defendants did no more than pursue peaceful studies and discussions or teaching and advocacy in the realm of ideas, you must acquit them.

For example, it is not unlawful to conduct in an American college or university a course explaining the philosophical theories set forth in the books which have been placed in evidence by the prosecution such as the Communist Manifesto, Foundations of Leninism and so on. Of course these books are to be found in Public Libraries and in the libraries of American Universities. Indeed, many of our most outstanding and sincere educators have expressed the view that these theories should be widely studied and thoughtfully considered, so that all may thoroughly appreciate their significance and the inevitable effects of putting such theories into practice. Do not be led astray by talk about thought control,

or putting books on trial. No such issues are before you here.

But no one could suppose nor is it the law that any person has an absolute and unbridled right to say or to write and to publish whatever he chooses under any and all circumstances. If he did have such a right and if such were the law the words

"WE THE PEOPLE of the United States, in Order to form a more perfect Union, establish Justice, *insure domestic Tranquility,* provide for the common defence, *promote the general Welfare,* and secure the Blessings of Liberty to ourselves and our posterity, do ordain and establish this Constitution of the United States of America."

as contained in the Preamble to the Constitution would be no more than empty phrases. Doubtless you observed that I placed emphasis on the "insure domestic Tranquility" and "promote the general Welfare" clauses of the Preamble. Words may be the instruments by which crimes are committed, as in many familiar situations; and it has always been recognized that the protection of other interests of society may justify reasonable restrictions upon speech in furtherance of the general welfare.

And so I come to the construction and interpretation of the statute. You will have noticed that, to infringe this law, a defendant must not only have conspired to organize as the Communist Party of the United States of America a society, group and assembly of persons who teach and advocate the overthrow or destruction of the Government by force and violence, and to advocate and teach the duty and necessity of overthrowing or destroying the Government by force and violence. The statute makes such conduct unlawful only when persons have so conspired "wilfully" or "knowingly;" and the indictment so charges these defendants.

Thus the question of intent also enters into the offense charged. If you find that the defendants, or any of them, participated in the conspiracy charged in the indictment, one of the questions for you to consider and determine is whether they

acted wilfully. This is a question of their intent. You must be satisfied from the evidence beyond a reasonable doubt that the defendants had an intent to cause the overthrow or destruction of the Government of the United States by force and violence, and that it was with this intent and for the purpose of furthering that objective that they conspired both (1) to organize the Communist Party of the United States as a group or society who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and (2) to teach and advocate the duty and necessity of overthrowing or destroying the Government of the United States by force and violence. And you must further find that it was the intent of the defendants to achieve this goal of the overthrow or destruction of the Government of the United States by force and violence as speedily as circumstances would permit it to be achieved.

In further construction and interpretation of the statute I charge you that it is not the abstract doctrine of overthrowing or destroying organized government by unlawful means which is denounced by this law, but the teaching and advocacy of action for the accomplishment of that purpose, by language reasonably and ordinarily calculated to incite persons to such action. Accordingly, you cannot find the defendants or any of them guilty of the crime charged unless you are satisfied beyond a reasonable doubt that they conspired to organize a society, group and assembly of persons who teach and advocate the overthrow or destruction of the Government of the United States by force and violence and to advocate and teach the duty and necessity of overthrowing or destroying the Government of the United States by force and violence, with the intent that such teaching and advocacy be of a rule or principle of action and by language reasonably and ordinarily calculated to incite persons to such action, all with the intent to cause the overthrow or destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

No such intent could be inferred from the open and aboveboard teaching of a course on the principles and implications of Communism in an American college or university, where everything is open to the scrutiny of parents and trustees and anyone who may be interested to see what is going on. That is why it is so important for you to weigh with scrupulous care the testimony concerning secret schools, false names, devious ways, general falsification and so on, all alleged to be in the setting of a huge and well disciplined organization, spreading to practically every State of the Union and all the principal cities, and industries.

It is obviously impossible to ascertain or prove directly what were the operations of the minds of the defendants. You cannot look into a person's mind and see what his intentions are or were. But a careful and intelligent consideration of the facts and circumstances shown by the evidence in any given case enables us to infer with a reasonable degree of accuracy what another's intentions were in doing or not doing certain things. With a knowledge of definite acts we may draw definite logical conclusions. We are in our affairs continually called upon to decide from actions of others what their intentions or purposes are. And experience has taught us that frequently actions speak more clearly than spoken or written words. You must therefore rely in part on circumstantial evidence in determining the guilt or innocence of any of these defendants.

Circumstantial evidence may be received and is entitled to such consideration as you may find it deserves depending upon the inferences you think it necessary and reasonable to draw from such evidence. No greater degree of certainty is required when the evidence is circumstantial then when it is direct, for in either case the jury must be convinced beyond a reasonable doubt of the guilt of the defendants. Circumstantial evidence consists of facts proved from which the jury may infer by process of reasoning other facts sought to be established as true.

Different inferences, however, may be drawn from the facts and circumstances in

the case, whether proved by direct or circumstantial evidence. The prosecution asks you to draw one set of inferences while the defendants ask you to draw another. It is for you to decide and for you alone, which inferences you will draw. If all the circumstances taken together are consistent with any reasonable hypothesis which includes the innocence of the defendants, or any of them, the prosecution has not proved their guilt beyond a reasonable doubt, and you must acquit them. On the other hand, if you find that all of the circumstances established by the evidence in this case, taken together, satisfy you beyond a reasonable doubt of the guilt of the defendants, in accordance with these instructions, it is your duty to find the defendants guilty.

Thus, if you find that the evidence has established to your satisfaction beyond a reasonable doubt that any defendant has violated the statute as thus construed by me, you will find such defendant guilty. Otherwise you will acquit him by a verdict of not guilty. Under these instructions you may find all the defendants guilty or all of them not guilty or you may find one or more of them guilty and the others not guilty.

■■■ If you are satisfied that the evidence establishes beyond a reasonable doubt that the defendants, or any of them, are guilty of a violation of the statute, as I have interpreted it to you, I find as matter of law that there is sufficient danger of a substantive evil that the Congress has a right to prevent to justify the application of the statute under the First Amendment of the Constitution.

This is matter of law about which you have no concern. It is a finding on a matter of law which I deem essential to support my ruling that the case should be submitted to you to pass upon the guilt or innocence of the defendants. It is the duty of counsel for both sides to present by way of objections, motions, and similar procedural devices, matters of law affecting the case for my consideration and determination. All such matters of law and their presentation by counsel, including motions of every name, nature and description, challenges, questions relating to the admissibility of evi-

dence and things of that sort must be entirely disregarded by you. These are matters of procedure with which you have no concern. Neither the presentation of such matters by counsel for either side, nor any argument made in support or in opposition to any of them, have any bearing upon your deliberations. Put all such matters out of your minds. They should not influence you in any way in arriving at your verdict.

I charge you that in arriving at your verdict you must not consider anything which the court has said with respect to the conduct of either the prosecution or counsel for the defense in the course of this trial as being any indication or suggestion or direction of the court to you as to what your verdict should be, nor shall you be influenced thereby in arriving at your verdict.

This brings me to certain of the requests for instructions, submitted by counsel for the defendants and by the prosecution which I have ruled to be proper. I charge them as follows:

Submitted on behalf of defendants:

■■■ Request No. 38. I charge you that you cannot find any defendant in this case guilty of the crime charged against him merely from the fact, if you find it to be a fact, that he associated with any other defendant or defendants whom you may find guilty of the offense charged.

■■■ Request No. 39. I charge you that under our system of law, guilt is purely personal and that you may not find any of the defendants guilty merely by reason of the fact that he is a member of the Communist Party of the United States of America, no matter what you find were the principles and doctrines which were taught or advocated by that Party during the period defined in the indictment.

Request No. 75. Circumstantial evidence is not direct proof of a fact. It is that evidence which tends to prove a disputed fact by proof of other facts which have a legitimate tendency to lead the mind to infer that the fact sought to be established is true.

■■■ Request No. 76. I charge you that you may not presume the existence of a fact and then infer from such presumed fact the

existence of any other fact or circumstance; nor may you infer from any presumed fact or facts that the defendants, or any one of them, are guilty of the offense alleged in the indictment.

Request No. 84. I charge you that it is not enough for the prosecution to show the existence of an agreement and the membership therein of any particular defendant. This alone would not prove that such defendant participated in the agreement "knowingly and wilfully." With respect to each defendant, the prosecution has the further burden of proving beyond a reasonable doubt that such defendant participated in such agreement wilfully; that is, the prosecution must prove that such defendant entertained the specific intention to teach or advocate the duty or necessity of overthrowing or destroying the government of the United States by force or violence and to organize as the Communist Party a group of persons who teach or advocate the overthrow or destruction of the government of the United States by force or violence and that in either case that he intended to teach or advocate such doctrine with the specific intention and for the evil purpose of bringing about the overthrow or destruction of the Government of the United States by force or violence, and not that he intended some result other than that.

If you are not convinced beyond a reasonable doubt that such defendant acted "wilfully," your verdict must be not guilty.

■ Request No. 98. There has been testimony in this case by prosecution witnesses of acts and statements of persons other than defendants which were alleged to have taken place prior to the period defined in the indictment. I charge that you may not consider any such statement or act as evidence against any defendant unless any such statement was made or any such act was done by the direction or authority or with the approval of such defendant. And even if you find such statement was made or act was done by the direction or authority or with the approval of any defendant you must consider such evidence only in your determination of whether or not such defendant had the specific intent to engage in the conspiracy charged in the indictment at the time alleged in the indictment.

Request No. 99. There has been testimony in this case by prosecution witnesses concerning acts or statements purported to have been done or made by certain defendants prior to the period defined in the indictment. I charge that you may consider such testimony only against the particular defendant or defendants alleged to have made such statement or engaged in such act and then only to the extent that it tends to establish the specific criminal intent of the particular defendant to commit the offense charged in the indictment in the period from on or about April 1945 to July 20, 1948. You may not consider such testimony in determining the intent of any other defendant to commit the offense charged, unless you find such statement was made or act was done by the direction or authority or with the approval of any such defendants.

Request No. 107. I charge you that if you are convinced that any defendant or defendants taught or advocated any statement, principle or program prior to the period defined in the indictment which was abandoned by any such defendant prior to the period defined in the indictment and not adopted thereafter you may not consider such statement, principle or program in the determination of whether or not any such defendant had the specific intent to engage in the conspiracy set forth in the indictment.

Request No. 135. I charge you that even if you find from the evidence that there was such a conspiracy, as charged in the indictment, nevertheless any statements made by a defendant as to the purposes, policies or aims of the Communist Party and any other acts or declarations of a defendant may not be imputed to any of the other defendants unless done or made in furtherance of such conspiracy and while such conspiracy was in existence.

■ Request No. 237. The indictment alleges that it was part of the conspiracy that "defendants would publish and circulate, and cause to be published and

394

circulated, books, articles, magazines, and newspapers advocating the principles of Marxism-Leninism." I charge you that the words "books and articles" as thus used in the indictment include pamphlets.

Request No. 273. I charge you that the word "revolution" in its broadest significance is generally used to designate a sweeping change; as applied to political change, it denotes a change in a method or system of government, or of the power which controls the government. It is frequently, though not always, accomplished by, or accompanied by violent acts, but it need not be violent in its methods. It does not necessarily denote force or violence.

 Request No. 275. I charge you that the statute under which the defendants were indicted does not prohibit the teaching or advocacy of peaceful change in our social, economic or political institutions, no matter how fundamental or far-reaching or drastic such proposals may be.

Submitted by the prosecution:

Request No. 18. There are several kinds of conspiracies made illegal by federal statutes. Some of these statutes require the allegation and proof of the commission of an overt act by one or more of the conspirators before a crime is complete. However, the statute under which this indictment was returned does not require the allegation or proof of the commission of an overt act.

Request No. 31. You are instructed that the question of possible punishment of the defendants or any of them, in the event of conviction is no concern of the jury, and should not in any sense enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. The function of the jury is to weigh the evidence in the case and determine the guilt or innocence of the defendants solely upon the basis of such evidence. Under your oaths as jurors, you cannot allow a consideration of the punishment which may be inflicted upon the defendants, if they are convicted, to influence your verdict in any way.

Request No. 34. During the course of the trial there have been various references to the Opinion of the Supreme Court in the case of Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. That case was not a prosecution under the statute involved here and the Supreme Court did not determine any issue which is before you for determination.

Now, ladies and gentlemen of the jury, one last word. If you find that the evidence respecting the defendants or any of them is reasonably consistent with innocence, such defendant or defendants should be acquitted. If you find that the law has not been violated, you should not hesitate for any reason to render a verdict of not guilty. But, on the other hand, if you find, in accordance with these instructions, that the law has been violated as charged, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

The exhibits will be gathered together by counsel and will be available for the jury if the jury wish to have them.