Ruffin, Judge
 

 There can he no doubt that an accomplice, merely as sueli, is a competent witness on either side.
 
 Sergeant Hawkins (book
 
 2, c.
 
 46, s.
 
 18) states, that it is no exception to a witness, that he confesses himself guilty of the same crime, if he be not indicted for it When indicted however, he adds, accomplices are good witnesses for the King, until they be convicted. 1 take it, the rule is perfectly established as thus laid down. It is found iri all the text'writers, and many adjudged cases. The very manner in which
 
 Hawkins
 
 states it, would exclude the accomplice, jointly indicted, from testifying on behalf of his co-defendant. He first says, that an accomplice, not indicted, may be a witness
 
 for
 
 or
 
 against
 
 a
 
 prisoner;
 
 and then further remarks, that accomplices, jointly indicted, may be witnesses
 
 against
 
 the prisoner. This excludes the idea, that he can testify for him. It must be obvious, that an accomplice indicted can only be called for the State by his own consent. For he never can be forced to give evidence upon an indictment, in which he stands accused. If he cannot be compelled to testify against the prisoner, because he himself is implicated ; neither do 1 think, for the same reason, ought he to be permitted to give evidence for him. Í do not know, that his exclusion depends so much upon his direct and particular interest in the verdict, touching his co-defendant, as upon a principle of public policy, arising out of the presumption, that it is dangerous to suffer one, apparently, upon the record, guilty of the same offence, to exculpate his associate in crime. For after bill found, a Defendant is presumed to be guilty to most, if not to,
 
 *422
 
 a]j purposes, except that of a fair and impartial trial before a
 
 petit
 
 jury. This presumption is so strong, that in the case of a capital felony, the party cannot be let to bail, it seems likewise, to have been the ground, upon which the Courts have refused to hear them in exoneration of their companions, moi’f than of themselves. The force of the principle of association to elude, as well as to disregard and resist the law, is so powerful, that an honest and impartial relation cannot be hoped for. But whatever may have caused (he rule, it is found by us, as •an ancient one, thoroughly incorporated with the law of public
 
 trials;
 
 and can only be annulled by the law making power. It is so laid down by
 
 Mr. Justice
 
 Butler,
 
 (Law of Nisi Prius
 
 285,) and in
 
 Mr. McNally’s Treatise
 
 214. And
 
 Lord Ellenborough
 
 says, (in
 
 Rex
 
 v.
 
 Laforce, 5 Esp. Pep.
 
 155,) that “ he iiad never known joint Defendants to give evidence for each other,” and lie rejected the witness, although he was not on trial, having suffered judgment by default. He said, when a Defendant has been fined,
 
 then
 
 he is a witness. And with this accord other books.
 
 (Rex
 
 v.
 
 Fletcher,
 
 1
 
 Str.
 
 633.) They state the uniform method to be, for one Defendant to plead guilty and be fined, or if
 
 no
 
 evidence be produced against him on the joint trial, for the jury to pass on his case. He may then give evidence for the others.
 
 (Gilb. Ev.
 
 117.) To the same effect have been the practice and decisions in this State. So far as my observation has gone, I can speak to the unvarying usage. The question was made in the late Supreme Court in 1814, iri tiie case of
 
 Rebecca
 
 Garter,
 
 *
 
 who was indicted with
 
 Fanny Snow
 
 for murder. The indictment was found in Caswell and removed, as to the former, to Guilford. Upon her trial, the other was offered as a witness, and rejected by Judge Ham,, who brought the question up. There was a difference of opinion $ but a majority of the Court thought
 
 *423
 
 the witness incompetent.. The dissenting Judges, I learn, considered the rule as applying only to cases of joint trial, as well as a joint indictment. But in this, I think, they were mistaken, as is shown by the case of
 
 Rex
 
 v.
 
 Laforce,
 
 just quoted, and a case in New-York.
 
 (The People
 
 v.
 
 Bill,
 
 10 Johns, 95.)
 
 Carter’s
 
 case has been held the law of all cases on the circuits, for the last fifteen years. It is further contended, that here is not only a separate, trial, but that by the change of the
 
 venue
 
 as to the witness, it became a separate indictment $ in which case, each Defendant is certainly competent to speak for the other. I do not perceive how the consequence demanded follows the removal. The parties are indeed to be tried separately, but each is to be tried on an indictment against both, as much as if several trials took place in the same Court. But the objection is removed by the authority of
 
 Carter’s
 
 case
 
 •,
 
 in w hich precisely the same state of facts existed.
 

 The objection to the indictment is founded on the position, that at common law, no trespass either on lands or chattels, was indictable, without a breach of the peace, and that as to chattels, so the law now remains. I do not suppose, that an actual breach of the peace is necessary, to make a trespass a crime. But certainly it must be something more than a mere civil injury, or that degree of force, which is expressed by the terms
 
 vietarmis,
 
 The act must involve a breach of the peace, or manifestly and directly tend to it, as being done in the presence of tiie party, to his terror, or against his will. The force or the numbers can make no difference, (except under the statutes of forcible entry,) where they neither pul the owner in fear, nor provoke him to an immediate redress of his wrong by force, nor excite him to protect the possession of his chattel by'personal prowess ; and none of these can happen in the absence of the owner and his family. Hence, “strong hand” and “ numbers” in this indictment do not of themselves import more than the
 
 *424
 
 requisite force. The presence of the owner cannot he implied from them. They are found first in the statute of 5
 
 Richard II,
 
 and relate to a forcible entry; which may be, under the statute, if done violently, as well in the owner’s absence as presence. Nor would the lawful possession of the prosecutrix, stated in the indictment, suffice. For that would be true of a mere constructive possession. But the indictment goes on to charge, after the lawful possession of
 
 Skoda Waller,
 
 that
 
 “
 
 the Defendants, with strong hand, unlawfully, violently and forcibly did seize, arrest and
 
 take from the said TI. W. the said slaves.”
 
 “Taking from
 
 her,”
 
 in ordinary parlance, is certainly to be understood as taking from the person, and the force shows the want of consent, or at all events, of a free consent. The words to any common understanding carry the idea of personal presence. The facts are not indeed charged with the utmost precision. But a charge of taking
 
 from another,
 
 with
 
 force and violence
 
 does seem plain, intelligible and explicit enough, in the case of a misdemeanor.
 

 Per Curiam. — Let the judgment of the Court below be affirmed.
 

 *
 

 Not reported.