## Ex Parte MALLEY

### No. 2775

June 3, 1927.                                    256 P. 512.

1. BAIL—ACCUSED CANNOT DETERMINE AMOUNT.

Notwithstanding purpose of constitutional provision to prevent fixing of bail in so great an amount as to preclude bond being given, it was not intended that accused should be the one to say whether he could give bail in certain amount or when it would be excessive.

2. BAIL—BAIL MUST NOT, UNDER CONSTITUTIONAL PROVISION, BE MORE THAN ACCUSED CAN BE EXPECTED TO GIVE.

Bail must not be in an amount more than accused can reasonably be expected to give under the circumstances, for, if so, it is, under the constitutional provision, substantially a denial of bail.

3. BAIL—PRISONER'S MERE INABILITY TO PROCURE BAIL DOES NOT RENDER AMOUNT EXCESSIVE.

Mere inability to procure bail does not of itself make amount excessive, but regard must be had to the circumstances of the prisoner in connection with the turpitude of the crime and the punishment involved.

4. BAIL—ACCUSED PRESUMED GUILTY.

In an original proceeding in habeas corpus to obtain reduction of bail under seven indictments under Rev. Laws, 648, 2824, and 6664, including a charge of embezzlement of state funds and securities, the petitioner held presumed to be guilty of the offenses charged.

5. BAIL—NOT EXCESSIVE.

Bail of $100,000 held not excessive under seven indictments under Rev. Laws, 648, 2824, 6664, including charge of embezzlement of funds and securities of the value of $516,000 belonging to the state, for which accused, if convicted under all of them, might be given cumulative sentence, under section 7256, of more than 100 years' imprisonment and fines aggregating $20,000.

6. BAIL—ACCUSED'S ALLEGED INABILITY TO PROCURE BAIL IN AMOUNT FIXED HELD NOT DETERMINATIVE, EVEN IF SUPPORTED BY EVIDENCE.

Alleged inability of one accused under seven indictments, including indictment charging embezzlement of state funds and securities having value of $516,000, to furnish greater bail than $25,000, though it should be considered in original proceeding in habeas corpus to reduce bail, is not determinative, even if supported by evidence, since real purpose of bail is to assure presence of accused, and he must be presumed guilty.

7. BAIL—SUPREME COURT WILL NOT ORDER REDUCTION OF BAIL, UNLESS AMOUNT APPEARED PER SE UNREASONABLY GREAT.

The supreme court is not justified in ordering reduction of bail, unless the amount appears per se unreasonably great and disproportionate to the offense charged.

C. J.–CYC. REFERENCES
BAIL—6 C. J. sec. 221, p. 989, n. 5 (new) ; sec. 222, p. 989, n. 8–12;
sec. 223, p. 991, n. 21 ; sec. 224, p. 991, n. 26.

ORIGINAL HABEAS CORPUS by Ed Malley against the Sheriff of Ormsby County for reduction of bail. **Petition denied, proceedings dismissed, and petitioner ordered remanded.**

*McCarran & Mashburn,* for Petitioner:

Court should consider all circumstances and conditions surrounding petitioner; his inability to raise $100,000 bail; his long residence in state, and former good reputation; that his family lives here; that all his interests are here; that he is a marked man;. that escape is impossible; that purpose of bail is only to secure presence of defendant at trial; that any conditions could be imposed, such as reporting daily to sheriff; that punishment should follow conviction, not precede it, or be inflicted in spite of possible acquittal. Ex Parte Jagles, 44 Nev. 370.

President of State Bank & Trust Company indicted for embezzlement in 1908 was held in sum of $5,000. In extradition cases bail has never to our knowledge been fixed at sum to exceed $2,000 or $2,500.

*M. A. Diskin,* Attorney-General; *Wm. Forman, Jr., Lester D. Summerfield, N. J. Barry,* Deputy Attorneys-General; *John Chartz,* District Attorney, for Respondent:

Discretion of trial court in fixing bail will not be disturbed unless abuse is shown. 6 C. J. 991.

For purpose of fixing bail, defendant is presumed guilty. Ex Parte Duncan, 53 Cal. 410; In Re Scott, 38 Nebr. 502, 56 NW. 1009; Ex Parte Haynie (Okl. Cr. App.), 241 P. 209.

Ex Parte Jagles, 44 Nev. 370, was mere gross misdemeanor case; bail was $3,000. Ex Parte Douglas, 25 Nev. 425, was grand larceny of cattle worth $540; bail fixed at $5,000 was reduced only to $3,000. In Ex Parte

Duncan, 53 Cal. 410, bail was fixed at value of property taken. In People v. Tweed, 63 N. Y. 202, embezzlement was $6,000,000; bail was $3,000,000. But in Ex Parte Snow, 1 R. I., embezzlement by treasurer of $70,000 or $80,000, bail was fixed at $125,000, the court saying: "It is offense which strikes deep upon the community and the funds and effects of the state." In no case found is bail reduced which is placed at less than 25% of value of property taken.

## OPINION

*Per Curiam:*

This is an original proceeding in habeas corpus, instituted for the purpose of procuring an order directing the reduction of a bail bond. There is no question as to whether such a proceeding is the correct one to obtain the end sought.

The petition alleges that on May 20, 1927, the grand jury of Ormsby County, Nevada, returned seven indictments against the petitioner and two others. The first indictment, omitting technical formalities, charges that the petitioner, being the duly elected, qualified, and acting treasurer of the State of Nevada, had in his possession as such state treasurer money, funds, and securities of the value of $516,000 belonging to the State of Nevada, and that said petitioner did on May 7, 1927, feloniously embezzle and convert said property to his own use.

The second indictment charges the petitioner, in conjunction with one George A. Cole and one H. C. Clapp, with a felony, in using a bank to injure, deceive, and defraud, in violation of section 648, Rev. Laws of Nevada, 1912, by causing to be issued to petitioner as state treasurer by H. C. Clapp, as cashier of the Carson Valley Bank, a corporation, on December 31, 1926, a cashier's check for $399,257.27, when no money or other consideration had been paid to said bank by the petitioner therefor, with the purpose and intent to cover and conceal the fact that the petitioner had converted and misappropriated securities, money, and funds of the State of Nevada of the value of $399,257.27.

The third indictment charges the same offense as is charged in the second, except that the amount of such cashier's check is alleged to be $67,065.

The fourth indictment is identical with the second and third, except that the amount of the cashier's check is alleged to be $49,999.89.

The fifth indictment charges the petitioner, in con-.junction with said Cole and Clapp, with embezzlement in violation of said section 648, Rev. Laws, 1912, as follows: That defendant Clapp during all of the years of 1919, 1920, 1921, 1922, 1923, 1924, 1925, 1926, and 1927 to and including April 24, 1927, was cashier of the Carson Valley Bank, a corporation existing under the laws of the State of Nevada, and as such cashier had in his possession, custody, and control money, funds and securities of the value of $516,822.16, belonging to and the property of said bank; that on or about April 24, 1927, the said Clapp did embezzle, convert, and misappropriate the said moneys, funds, and securities to his own use, with intent to steal the same, and that the petitioner and said Cole did feloniously aid, abet, and encourage said crime.

The sixth indictment charges the petitioner and said Cole and Clapp with forgery, as defined by section 6664, Rev. Laws of Nevada, as follows: That the said Cole was during all of the year 1926 the duly elected, qualified and acting state controller of the State of Nevada; that on or about December 31, 1926, the said Cole drew, made, and delivered to H. C. Clapp, as cashier of the Carson Valley Bank, a certain warrant drawn upon the state treasurer of Nevada, in the amount of $392,700; that the drawing, making, and delivery by said Cole to the said Clapp was a material matter to the public records and accounts of the office of controller of the State of Nevada; that the defendant Cole, on or about the 31st day of December, 1927 (evidently meant for 1926) did then and there fraudulently and feloniously, with intent to injure and defraud the State of Nevada and the people of said state and said bank, fail to make a true, or any, entry in the records and accounts of the

office of the controller of the State of Nevada of or con-
cerning said check, although he, the said Cole, well
knew it was his duty so to do; that said petitioner and
said Clapp did aid, abet, and encourage the said Cole
to commit the crime of forgery in manner and form
aforesaid.

The petitioner, jointly with George A. Cole and H. C.
Clapp, in the seventh indictment, is charged with a
felony as defined in section 2824, Rev. Laws, committed
as follows: That said Cole, during all of the year 1926,
was the duly elected, qualified, and acting controller of
the State of Nevada; that on or about December 31,
1926, said Cole, as such controller, willfully, fraudu-
lently, and feloniously did receive to his own use and
benefit a controller's warrant of the State of Nevada in
the sum of $392,700; that the petitioner and said
Clapp did feloniously aid and abet the said Cole in the
commission of said offense.

The petitioner further avers that on the 21st day of
May, 1927, the petitioner and said Cole and Clapp were
arraigned in the First judicial district court of the State
of Nevada, on each of said indictments, and that at that
time the court fixed the bail bond of petitioner at
$100,000 on all of said indictments combined, and
ordered that the petitioner be admitted to bail in the
sum of $100,000, and further ordered that the petitioner
be remanded to the custody of the sheriff of Ormsby
County until the petitioner give bail in the sum men-
tioned, and, upon the failure of the petitioner to give
bond in said sum, the sheriff imprisoned the petitioner
in the county jail of Ormsby County, Nevada, where he
has since been illegally restrained; that all of the crimes
so charged are bailable offenses, and that the bail so
fixed is excessive and disproportionate to the bail neces-
sary to assure the presence of the petitioner for trial,
and is out of proportion and in excess of the nature
of the offenses charged, the penalty which might be
inflicted, the danger of the failure of the petitioner to
appear, his character and reputation, and that the peti-
tioner is unable to give the same.

The return of the sheriff is to the effect that he has custody of the petitioner pursuant to the indictments and the order of the court fixing the amount of the bail bond and petitioner's failure to execute such bond.

1. In support of the contentions made by petitioner, reliance is had upon Ex Parte Jagles and Varnes, 44 Nev. 370, 195 P. 808. There is little in the matter mentioned to aid us in the one before us. It is true that we said in that matter that it was the purpose of the constitutional provision mentioned therein to prevent the fixing of a bail bond in so great a sum as to preclude its being given, and that it was the idea of the framers of the constitution that punishment should follow conviction, and not both precede and follow it, or be inflicted in spite of possible acquittal. However, it was not the idea of the constitutional convention that the person charged with a crime should be the one to say whether or not he can give bail in a certain amount, or to say when the amount fixed is excessive.

2, 3. The correct rule controlling in the situation presented is stated in 6 C. J. 989, as follows:

"Bail must not be in a prohibitory amount, more than the accused can reasonably be expected under the circumstances to give, for if so it is substantially a denial of bail within the constitutional provision. However, a mere inability to procure bail in a certain amount does not of itself make such amount excessive; but regard must be had to the circumstances and ability of the prisoner, in connection with the atrocity of the offense, or the turpitude of the crime and the punishment involved, in determining whether the bail is or is not excessive."

4. In a proceeding of this character the petitioner is presumed to be guilty of the offenses charged in the indictments. Ex Parte Duncan, 53 Cal. 410; Ex Parte Haynie (Okl. Cr. App.), 241 P. 209; In Re Scott, 38 Neb. 502, 56 NW. 1009.

5. With these observations in mind, let us inquire if the amount of bail bond fixed is excessive and disproportionate to the offense charged.

The petitioner is held under seven indictments, conviction under four of which might subject him to a term in the state prison of 20 years each, and, if convicted under all of them, and given a cumulative sentence, as seems may be done (section 7256, Rev. Laws, 1912; Ex Parte Gafford, 25 Nev. 101, 57 P. 484, 83 Am. St. Rep. 568), he might be sentenced to serve for a period of more than 100 years.

Counsel for the state have called to our attention several cases in which bail bonds larger in proportion to the amount embezzled than in the instant case were held not excessive.

In People v. Tweed, 63 N. Y. 202; Id., 50 How. Pr. (N. Y) 26, where Tweed was charged with embezzling $6,000,000, the court held that a bail in the sum of $3,000,000 was not objectionable. In Ex Parte Snow, 1 R. I. 360, wherein the petitioner was charged with embezzling between $70,000 and $80,000, and bail bond was fixed at $25,000, the court refused to reduce the amount of bail bond, saying:

"The bail required ought to be such as will afford a reasonable security that the prisoner will abide the sentence of the court, should he be found guilty. If a man has fifty thousand dollars and only five thousand is demanded, it would afford no security."

In Re Scott, supra, it appears that the petitioner was charged with having embezzled as county treasurer the sum of $70,000, and bail bond was fixed at $24,000. On application for a reduction thereof the court held that the amount of the bail bond was not excessive.

In Ex Parte Douglas, 25 Nev. 425, 62 P. 49, wherein the petitioner was charged with stealing 18 head of cattle of the value of $540, the court held that a $3,000 bond was proper.

In Ex Parte Duncan, 53 Cal. 410, it appears that the petitioner was indicted in ten indictments for embezzling the sum of $112,000, and was held to answer in that sum. On application for a reduction of the bond the supreme court refused to say that such a bond was excessive. The same matter was before the court again

after two trials in which there had been a hung jury, and the court again refused to reduce the amount of the bail. Ex Parte Duncan, 54 Cal. 75.

6, 7. It is said that the petitioner is unable to furnish bail in excess of $25,000. The ability of one charged with a crime to give the bail fixed is an element to be considered in an application of this character, but we have the bare statement of counsel to support the contention; there is no evidence before us to support it, and, even if there were, we would not deem it determinative of the matter, for the real purpose of bail is to assure the presence of one charged at all times when demanded. As we have observed, the petitioner must be presumed, in an application of this kind, to be guilty as charged, and, before we can be justified in ordering a reduction of the bail, it must appear per se unreasonably great and disproportionate to the offense charged.

The bond fixed is less than one-fifth of the amount charged to have been embezzled, a sum relatively small in comparison. When we consider that the petitioner may be sentenced to serve a period in excess of 100 years and to pay fines aggregating $20,000, in connection with the other elements entering into the case, we are unable to say per se that the amount of the bail fixed is excessive or disproportionate to the crime charged.

For the reasons given, it is ordered that the petition be denied, and that these proceedings be dismissed, and that petitioner be remanded.