**ESTES v. POTTER, United States Attorney, et al.**

Nos. 13069, 13112.

United States Court of Appeals Fifth Circuit.

Aug. 5, 1950.

866

Emanuel H. Bloch, and Carol King, New York City, New York, S. S. Barbaria, Dallas, Tex., for appellant.

Wm. Cantrell, Jr., Asst. U. S. Atty., and Frank B. Potter, U. S. Atty., Dallas, Tex., for appellee.

Before HOLMES, WALLER, and BOR-AH, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment that adjudicated the appellant to be in contempt of court, and sentenced him to imprisonment for thirty days and to pay a fine of one hundred dollars. The proceeding is one of civil contempt, which is not punishable by both fine and imprisonment for the same offense; but that does not preclude the court from imposing a fine as a punitive measure and imprisonment as a remedial measure, or vice versa. Sec. 401 of the New Criminal Code, 18 U.S.C.A. § 401; Penfield Co., etc., v. Securities and Exchange Comm., 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117, 1124.

This case arises out of a statute that authorizes immigration inspectors to conduct examinations with reference to the right of aliens to be and reside in the United States. That statute was being invoked here; and the court below, upon application duly made, ordered appellant to answer certain questions, which he declined to do on the ground that his answers might tend to incriminate him. The questions sought to be elicited from appellant, if he knew, were whether certain aliens were Communists or had been active in the Communist party. These were pertinent and material questions, because the appellee contends here that membership in such party, or communistic activity, aims toward the overthrow of the United States Government by force and violence, and such activity on the part of any alien is ground for exclusion or deportation.

The court below deemed frivolous the appellant's claim of immunity from giving testimony against himself. It said: "If one were asked whether he knew the general reputation of a horse thief, he could not say, 'I wont tell that, because it might incriminate me. I might, myself, be a horse thief.' There is no real logic in that position." Addressing the defendant, the court said: "If and when this court's judgment

with reference to answering these questions is upheld, then that will continue to be the order, and you are liable to spend a long time in jail, when you ought to be a free man, and all in the world you have to do to be a free man is simply to answer, 'Do you know these aliens? Are they Communists? Do you know this man here? Is he a horse thief?' Do you see the point? Do you know this man here? Is he a preacher? Is he a lawyer? You can see how simple it is. There is nothing in that. So, I find you in contempt, and sentence you to pay a fine of $100 and to remain in jail for thirty days, unless you purge yourself. The Marshal will take charge of him and he will stand committed until that fine is paid and the sentence served."

We cannot agree that the matter is so simple. The answers to these questions in themselves may not have even tended toward the incrimination of appellant, but they may have been links in a chain of circumstantial evidence strong enough to convict him of a number of crimes; or such answers might well provide the means whereby such evidence could be discovered. Appellant's claim of privilege rests upon a reasonable fear of prosecution under 18 U.S.C.A. § 2385, and the general prohibition against conspiracy to commit an offense against the United States, 18 U.S.C.A. § 371. The offenses defined in the foregoing statutes include at least the following: (1) Knowingly or wilfully advocating the overthrow of the government by force or violence; (2) Knowingly or wilfully abetting such advocacy or such overthrow; (3) Organizing a society, etc., which teaches, advocates, or encourages the overthrow of government by force or violence; (4) Helping or attempting to organize such a society; (5) Becoming a member of any such society knowing its purposes; (6) Affiliating with any such society knowing its purpose; and (7) Conspiracy to do any of the foregoing.

▇ If the answers to the questions might tend to show that the appellant was a member of or affiliated with the Communist party, his fear of criminal prosecution was justified. There is no statute that makes it a crime to be a member of the Communist party, but the very object of the investigation to which the appellant was subpoenaed was to ascertain whether the aliens in question were members of or affiliated with the Communist party and, therefore, subject to deportation under 8 U.S.C.A. § 137, subdivisions (e) and (g) of which provide for the deportation of any aliens who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches, the overthrow by force or violence of the government of the United States. We assume the appellee's position to be that membership in the Communist party by an alien comes within the ban of Sec. 2385 of the New Criminal Code, 18 U.S.C.A. § 2385, and the deportation statute just cited. It is palpably inconsistent, in one breath, to urge that being a Communist is a ground for deportation for belonging to a group that encourages the overthrow of the government by force; and, in the next breath, to argue that it may not incriminate one to be compelled to testify that he is a Communist, knows Communists, or has attended a meeting of Communists. Yet, this seems to be the position of appellee; it would be idle merely to ask the witness if he knew the aliens and, upon his answering yes, then to stop his examination; and the law never requires the doing of an idle thing. The form of the question, "Do you know this horse-thief," would be objectionable, because it would imply that the defendant was a horse-thief.

Appellant was asked whether he personally knew the alien; if he knew whether said alien was a member of the Communist party; if he knew whether the alien contributed funds to the Communist party; if he knew whether the alien attended meetings of the Communist party, etc. He could hardly know whether the alien attended meetings without being present there in person, and evidence of appellant attending such meetings would tend to show that he was a Communist. Appellant was not asked concerning things that he might have heard or been told. He was not asked if he knew the alien's reputation for communistic activities. The distinction is a significant one.

He could not know the crucial things that he was asked about without furnishing a link in the chain of evidence that might be needed to convict him under the New Criminal Code, 18 U.S.C.A. § 2385 or 18 U.S. C.A. § 371. If affiliation with the Communist party is sufficient ground for deportation of an alien for the reasons urged, it is a reasonable ground for a citizen to fear a prosecution for conspiracy. If the appellant denies that he is a 'Communist, he may be prosecuted for perjury; if he admits it, he may be prosecuted for belonging to a group that encourages the overthrow of governments by force; if he declines to do either, he is "liable to spend a long time in jail, when [he] ought to be a free man." This is a perilous position for a citizen, who is presumed to be innocent unless the facts here are sufficient to adjudge him guilty of contempt.

■■ The questions propounded to appellant do not disclose the incriminatory nature of the answers sought to be elicited, but appellant does not have to prove that his answers would incriminate him to be entitled to his privilege. If that were the nature of the burden, he would be forced to divulge the very facts that the immunity permits him to suppress. A witness need only show that his answers are likely to be dangerous to him. If in the circumstances it is reasonable to infer the possibility of incrimination from the answers that the witness may give, the privilege may be claimed. It is for the court to determine, in the first instance, whether incrimination is reasonably possible from any answer the witness may give; but if such possibility exists, then the witness has the absolute right to assert his privilege, which extends to more than the admission of a crime or any element thereof. The privilege bars compulsory disclosure of any fact that tends to incriminate a witness. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198; In re Willie (United States v. Burr), 25 Fed. Cas. page 38, No. 14,692e; United States v. Zwillman, 2 Cir., 108 F.2d 802, 803; United States v. Weisman, 2 Cir., 111 F.2d 260, 262; United States v. Cusson, 2 Cir., 132

F.2d 413, 414. It would be difficult to improve upon the strong and clear language of Marshall, C. J., in United States v. Burr, 25 Fed.Cas. 38, at page 40, No. 14,692e:

"When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned, or the oath of the witness be received.

"* * * Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe; but draw it from

thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description.

"What testimony may be possessed, or is attainable, against any individual the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws."

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Judge WALLER took no part in the final decision of this case.