**UNITED STATES v. SPECTOR et al.**

**UNITED STATES v. SCHNEIDERMAN et al.**

**Nos. 21940 and 21883.**

United States District Court
S. D. California, Central Division.
Dec. 14, 1951.

Walter S. Binns, Asst. U. S. Atty., Norman Neukom, Asst. U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., all of Los Angeles, Cal., for the United States.

A. L. Wirin, Los Angeles, Cal., for defendant Frank Spector.

Norman Leonard, San Francisco, Cal., for defendant Frank Carlson.

Leo A. Branton, Jr., Los Angeles, Cal., for defendant Ben Dobbs.

Margolis & McTernan by Ben Margolis, Los Angeles, Cal., for all defendants.

MATHES, District Judge.

Following reversal of this court's order denying motions to reduce the $50,000 bail heretofore fixed as to each of the twelve defendants in Stack v. United States, 9 Cir., 1951, 193 F.2d 875, reversing United States v. Schneiderman, D.C.S.D.Cal.1951, 102 F.Supp. 52, the three defendants in No. 21940—Spector, Carlson and Dobbs— have now presented motions to reduce the $50,000 bail heretofore fixed as to each of them.

It is a disappointment that the Court of Appeals did not accompany its order of reversal with an opinion for the guidance of this court. More especially so, since the order of reversal contains specific directions—not as to maximum limits beyond which the Court of Appeals would view an amount unreasonable and hence "excessive" within the Eighth Amendment [U.S.Const. Amend. VIII]—but fixing the precise amount of bail to be required as to each defendant pending trial in this court.

Moreover the reviewing court, in fixing bail pending trial in this court, divided the twelve defendants into two groups, ordering that security of $5,000 be required to assure the presence of five and that twice that amount be required to assure the presence of the remaining seven. This circumstance heightens disappointment at the absence of an opinion or other guidance from the Court of Appeals, since this court is unable without such assistance to perceive any basis, rational or visceral, for the classification thus made. (A copy of the order of the Court of Appeals is included as an appendix hereto.) Cf. Stack v. Boyle, 72 S.Ct. 1, Id., 9 Cir., 192 F.2d 56.

The defendants in these cases are under indictment charged with conspiracy "to commit offenses against the United States prohibited by Section 2 of the Smith Act, 54 Stat. 671 (1940), 18 U.S.C. (1946 ed.) § 10, and 18 U.S.C. (1948 ed.) § 2385, by so conspiring * * * to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and * * * to organize and help organize as the Communist Party of the United States of America a * * * group * * * of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence * * *."

Rule 46(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., directs that: "If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the * * * judge * * * will insure the presence of the defendant, having regard to [1] the nature and circumstances of the offense charged, [2] the weight of the evidence against him, [3] the financial ability of the defendant to give bail and [4] the character of the defendant."

So it is the duty of the court, in considering the pending motions, to determine whether and, if so, to what extent the bail of $50,000 heretofore fixed as to each of the defendants exceeds the amount which will give adequate assurance of the presence of the accused, having regard to the criteria expressed in the above quoted provisions of Rule 46(c).

The "nature and circumstances of the offense charged" are discussed at length in United States v. Schneiderman, D.C.S.D. Cal.1951, 102 F.Supp. at page 58, supra, and it would serve no useful purpose to repeat.

As to "the weight of the evidence against [the accused]," the courts in some jurisdictions, in fixing bail, have presumed the accused to be guilty of the charge laid in the indictment. [See Hight v. United States, 1845, Iowa, Morris 407, 43 Am.Dec. 111; State v. Mills, 1830, 13 N.C. 420, 2 Dev. 420, 422; Ex parte Haynie, 1925, 32 Okl.Cr. 409, 241 P. 209; Ex parte Malley, 1927, 50 Nev. 248, 256 P. 512, 53 A.L.R. 395; Ex parte Horiuchi, 1930, 105 Cal. App. 714, 288 P. 708; State v. Richardson, Ohio Com.Pl.1939, 2 Ohio Supp. 1.]

Mr. Justice Butler, sitting as Circuit Justice in United States v. Motlow, 7 Cir., 1926, 10 F.2d 657, 659, quoted from the opinion of Chief Justice Mason of the Supreme Court of Iowa in Hight v. United States, supra. To quote further:

"An indictment furnishes no presumption of guilt against a person when on trial, but so far as it regards all intermediate proceedings between indictment and trial, it furnishes the very strongest possible presumption of guilt, if a grand jury is the appropriate organ of the law to decide in the first instance upon the guilt or innocence of the accused, and their finding of a true bill is conclusive so far as to put him on trial * * *.

"The humanity of our law requires that before a person shall be punished, he shall be found guilty by two independent juries. The verdict of the first raises a full presumption of guilt up to the time of his trial before the second." [43 Am.Dec. at page 113.]

The least that may be said then, in the light of reported precedents, is that for the purposes of fixing bail prior to trial "probable cause to believe that an offense has been committed and that the defendant has committed it" Fed.R.Crim.P. 5(c), 40(b)(3, 4) is furnished by the fact of indictment alone. See Beavers v. Henkel, 1904, 194 U.S. 73, 84–85, 24 S.Ct. 605, 48 L.Ed. 882; Hale v. Henkel, 1906, 201 U.S. 43, 60–63, 26 S.Ct. 370, 50 L.Ed. 652; United States ex rel. Kassin v. Mulligan, 1935, 295 U.S. 396, 400, 55 S.Ct. 781, 79 L.Ed. 1501; see also 4 Bl.Comm. *296–*298; United States v. Jones, C.C.Pa.1813, 26 Fed. Cas. p. 658, No. 15,495, 3 Wash.C.C. 224; People v. Goodwin, N.Y.Ct. of Gen.Sess. 1820, 1 Wheeler Cr.Cas. 434, 437; United States v. Averett, D.C.W.D.Va.1928, 26 F. 2d 676; People ex rel. Sammons v. Snow, 1930, 340 Ill. 464, 173 N.E. 8, 72 A.L.R. 798; contra: United States ex rel. Rubinstein v. Mulcahy, 2 Cir., 1946, 155 F.2d 1002.

The third criterion specified in Rule 46(c) to be considered by the court in fixing the amount of bail is "the financial ability of the defendant to give bail". Each of the defendants produced evidence in support of his pending motion. See Fed.R.Crim.P. 47, 12(b)(4), 26.

Defendant Frank Efroim Spector is an alien, born in Russia "about 55 years ago." He testified in part that at the time of his arrest in this case he was at liberty on $15,000 bail, see United States v. Spector, D.C.S.D.Cal.1951, 99 F.Supp. 778, and was working as a house painter earning "approximately $65 per week"; that prior to his arrest in June of this year for alleged violation of the Internal Security Act of 1950, 8 U.S.C.A. § 156(c), 99 F.Supp. at page 779, he was engaged in "other employment" at a wage of "take home pay $46.30 a week."

Defendant Spector refused to testify as to the nature of this prior employment, or the character of the work, or the identity of his employer, or how long he was so engaged. He testified that answers to questions concerning any of those matters might tend to incriminate him under some federal law. U.S.Const.Amend. V; United States v. Murdock, 1931, 284 U.S. 141, 148–149,

52 S.Ct. 63, 76 L.Ed. 210, Id., 1933, 290 U.S. 389, 396, 54 S.Ct. 223, 78 L.Ed. 381.

Defendant Spector also testified that questions as to recent travels in the Dominion of Canada or the Republic of Mexico, as to his friends or acquaintances in our border neighbors to the north and south, and as to any recent communications by correspondence or otherwise with persons in those two countries, all called for answers which might tend to incriminate him under some federal law.

Defendant Carlson testified that he is an alien born in Poland "about 39 years ago," and has lived in the United States for some thirty years; that at the time of his arrest in this case he was at liberty on $5,000 bail in deportation proceedings, see Carlson v. Landon, 9 Cir., 1950, 186 F.2d 183; Id., 9 Cir., 1951, 187 F.2d 991; Id., 1951, 341 U.S. 918, 71 S.Ct. 744, 95 L.Ed. 1353, and was receiving a wage of "approximately $60" per week. But like defendant Spector, defendant Carlson refused to testify as to the nature of his employment, or the character of the work, or the identity of his employer, or how long he had been so engaged, upon the ground that questions as to those matters called for answers which might tend to incriminate him under some federal law.

A newspaper reporter testified in effect that only a few months ago defendant Carlson represented himself as authorized to delineate some of the probable future policies and tactics of the Communist Party.

Defendant Ben Dobbs testified that he was born in New York "approximately 39 years ago"; that at the time of his arrest he was earning a wage of approximately $40 per week. But like defendants Spector and Carlson, defendant Dobbs refused to testify as to the nature or character of his work, or the identity of his employer, upon the ground that answers to questions concerning such matters might tend to incriminate him under some federal law.

There was received in evidence a form of registration made in 1948 by defendant Dobbs as a voter in Los Angeles County, in which he declared his intention "to affiliate at the ensuing primary election with the Communist Party."

Defendant Dobbs testified that he "served honorably in the armed forces of the United States from approximately 1941 to 1945," and received an honorable discharge.

As is true with respect to defendants Spector and Carlson, defendant Dobbs has previously been at liberty on bail in another case, and "obeyed all orders to appear in that proceeding." See Alexander v. United States, 9 Cir., 1950, 181 F.2d 480, 481; Dobbs v. United States, 9 Cir., 1950, 181 F.2d 632, 634, 636.

Each defendant states that he is prepared to furnish bail, and that his bail is able to deposit $10,000 as security.

 The final criterion specified by Rule 46(c) for the court to consider in fixing the amount of bail is "the character of the defendant." "A person's 'character'" said the court in Mester v. United States, D.C. E.D.N.Y.1947, 70 F.Supp. 118, 122, affirmed 332 U.S. 749, 68 S.Ct. 70, 92 L.Ed. 336, rehearing denied 1947, 332 U.S. 820, 68 S.Ct. 150, 92 L.Ed. 397, "is usually thought to embrace all his qualities and deficiencies regarding traits of personality, behavior, integrity, temperament, consideration, sportsmanship, altruism, etc. which distinguish him as a human being from his fellow men. His disposition toward criminal acts is only one of the qualities which constitute his character."

 It is well settled in the courts of the United States that there is no presumption a defendant charged with crime is of good character. Greer v. United States, 1918, 245 U.S. 559, 560–561, 38 S.Ct. 209, 62 L.Ed. 469. And none of the defendants at bar offered any evidence of reputation as to any of the traits of character relevant to determination of the ultimate inquiry as to what amount of security is necessary to "insure the presence of the defendant."

For a court to be called upon to appraise the character of an accused without knowledge of the nature of his occupation, the identity of his employer, or the duration of his employment in such un-

known work, appears to be without precedent.

██ The law does not of course compel a defendant to take the witness stand and testify, and no presumption or inference of any kind may be drawn from the failure of a defendant to take the witness stand. 18 U.S.C. § 3481. But, as Mr. Justice Douglas said in Johnson v. United States, 1943, 318 U.S. 189, 195, 63 S.Ct. 549, 552, 87 L.Ed. 704: "The case of an accused who voluntarily takes the stand and the case of an accused who refrains from testifying (Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257) are of course vastly different. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. His 'voluntary offer of testimony upon any fact is a waiver as to *all other relevant facts,* because of the necessary connection between all.' 8 Wigmore, Evidence (3d ed., 1940) § 2276(2). And see Fitzpatrick v. United States, 178 U.S. 304, 315, 316, 20 S.Ct. 944, 948, 949, 44 L. Ed. 1078; Powers v. United States, 223 U.S. 303, 314, 32 S.Ct. 281, 283, 56 L.Ed. 448."

██ The Government has conceded that the privilege claimed by the defendants here was not waived by testimony voluntarily given. Cf. Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344; Raffel v. United States, 1926, 271 U. S. 494, 498–499, 46 S.Ct. 566, 70 L.Ed. 1054; United States v. Gates, 2 Cir., 1949, 176 F.2d 78, 80; United States v. Johnson, D. C.M.D.Pa.1947, 76 F.Supp. 538, 541. And it was pointed out in Johnson v. United States, supra, 318 U.S. at page 196, 63 S.Ct. at page 553, that "where the claim of privilege is asserted and unqualifiedly granted, the requirements of fair trial may preclude any comment. That certainly is true where the claim of privilege could not properly be denied. The rule which obtains when the accused fails to take the stand (Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650) is then applicable."

██ The rules just stated apply upon trial of issues raised by allegations of the indictment and denial made by plea of the accused. The proceedings upon these motions do not constitute a trial, but an *ad hoc* inquiry interlocutory in character into those factors which Rule 46(c) requires the court to consider in fixing the amount of bail. The defendants are nonetheless entitled in my opinion to the benefits of 18 U.S.C. § 3481 upon these proceedings. See former 28 U.S.C. § 632 (1940 ed.); Reviser's note 18 U.S.C. § 3481, H.R.Rep. No. 304, 80th Cong. (1948).

██ But when a defendant testifies as to his earnings and then declines to say what work he does in return for his wage, or how long he has been so engaged, or by whom employed, claiming the protection of the Fifth Amendment [U.S.Const. Amend. V], he makes oath to the fact that questions as to such matters call for answers which might tend to incriminate him under some federal law.

As Mr. Chief Justice Marshall put it, sitting as Circuit Justice in United States v. Burr, C.C.D.Va.1807, 25 Fed.Cas. pp. 38, 40, No. 14,692e: "If, in such a case, he say upon his oath that his answer *would criminate himself,* the court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned, or the oath of the witness be received." See also Estes v. Potter, 5 Cir., 1950, 183 F.2d 865, 868, certiorari denied 1951, 340 U.S. 920, 71 S.Ct. 356, 95 L.Ed. 664; United States v. Collins. D.C.D.Or.1906, 145 F. 709, 711–712.

In considering character then, the court is confronted with this dilemma:

*First:* That the defendants are not presumed to be of good character. Greer v. United States, supra, 1918, 245 U.S. at pages 560–561, 38 S.Ct. 209, 62 L.Ed. 469.

*Second:* That in testifying they might be incriminated under some federal law if called upon to answer as to the nature or duration of employment or identity of employer, the defendants are either perjurers or persons who fear themselves engaged in doing something forbidden by fed-

eral law while in the employ of an employer likewise engaged.

 Such conduct, if engaged in, would no doubt constitute a conspiracy. Moreover, as Mr. Justice Douglas put it in Pinkerton v. United States, 1946, 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489: "A conspiracy is a partnership in crime. United States v. Socony-Vacuum Oil. Co., 310 U.S. 150, 253, 60 S.Ct. 811, 858, 84 L.Ed. 1129. It has ingredients, as well as implications, distinct from the completion of the unlawful project. As stated in United States v. Rabinowich, 238 U.S. 78, 88, 35 S.Ct. 682, 684, 685, 59 L.Ed. 1211:

" 'For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered.' "

 Although for the purposes of fixing bail prior to trial "probable cause to believe that an offense has been committed and that the defendant has committed it" Fed.R.Crim.P. 5 (c), 4(b)(3, 4) is furnished by the fact of indictment, Beavers v. Henkel, supra, 194 U.S. at page 85, 24 S.Ct. 605, 48 L.Ed. 882, it is beyond the experience of this court to draw the inference that any person could be employed at "wages" of from $40 to $60 per week to engage in the activities alleged in the indictment.

Hence necessity would seem to dictate an inference that the accused may be engaged in some other employment forbidden by federal law. Adulterated food or drugs? Counterfeiting? Smuggling? Narcotics? Misuse of the mails?

How is it possible in this state of the record to appraise satisfactorily the place of the defendants in the community—their probable responsiveness to the orders of the court—their characters?

As with respect to the twelve defendants in United States v. Schneiderman, supra, 102 F.Supp. 52; Stack v. United States, supra, 9 Cir., 193 F.2d 875, this court has had the opportunity to view these defendants as witnesses on the stand. See Aetna Life Ins. Co. v. Ward, 1891, 140 U.S. 76, 88, 11 S.Ct. 720, 35 L.Ed. 371; Quock Ting v. United States, 1891, 140 U.S. 417, 420–421, 11 S.Ct. 733, 35 L.Ed. 501.

 However, both the nature of the proceedings and the fact they antedate the trial must necessarily limit their scope. It is neither practical nor proper for the court to reach definitive conclusions as to credibility or to make findings thereon in advance of the trial. To do so might prejudice the accused and take substance from the right of trial by jury.

Where, as here, there is absence of evidence of reputation as to any of the traits of character relevant to determination of the ultimate inquiry: what amount of bail "will insure the presence of the defendant"; where there is absence of evidence as to the nature of a defendant's work, the identity of his employer, or the duration of his employment, then ex necessitate appraisal of character is nebulous in the extreme. See Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; 1 Wigmore, Evidence § 52 (3d ed. 1940); 3 id. § 920.

As to financial ability and indicia of character, the evidence usually concerns matters peculiarly within the knowledge of the person whose character and financial ability are in question. The unsatisfactory state of the evidence as to those criteria in the proceedings at bar is due almost entirely to the election of the defendants to decline giving testimony upon constitutional grounds. While "no inferences whatever can be legitimately drawn * * * from the legal assertion by the witness of his constitutional right" Johnson v. United States, supra, 318 U.S. at page 196, 63 S.Ct. at page 553, that rule cannot serve to fill a gap in the proof. Cf. Kowalchuk v. United States, 6 Cir., 1949, 176 F.2d 873, 877.

To paraphrase language from the opinion in Caminetti v. United States, 1917, 242 U.S. 470, 493–494, 37 S.Ct. 192, 61 L.Ed. 442: A defendant is not required under the law to take the witness stand. He cannot be compelled to testify at all, and if he fails to do so, no inference unfavorable to him may be drawn from that fact. But when a defendant takes the witness stand in his own behalf, he voluntarily relinquishes his privilege of silence and ought not to be heard to speak alone of those things deemed to be for his interest and be silent where he or his counsel regard it for his interest to remain so, without the fair inference which would naturally spring from his speaking only of those things which would aid him and refraining to speak upon related matters within his knowledge which, according to his testimony, might tend to incriminate him. See United States v. Gates, supra, 176 F.2d at page 80; Fed.R.Civ.P. 47, 12(b)(4), 26.

 The Government contends inter alia "that the defendants are a poor bail risk because of the likelihood of flight." More particularly the contention is that the defendants are members of the Communist Party of the United States, and as such "are not free agents" but are "agents of the superior authority within that party."

Without reviewing the evidence offered in support of the Government's contention, it will suffice to say that such evidence and the indictment serve to establish, for the purpose of these proceedings, probable cause to believe that the defendants are members of the Communist Party and subject to the discipline of that party. See Beavers v. Henkel, supra, 194 U.S. at page 85, 24 S.Ct. 605, 48 L.Ed. 882.

The defendants at bar are charged with the offense of which Gus Hall, Gilbert Green, Henry Winston, Robert G. Thompson and others were convicted in Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, Id., 2 Cir., 1950, 183 F.2d 201.

Indeed the defendants in the Dennis case are charged as "co-conspirators but not defendants" in the indictment here, and with the defendants at bar and "divers other persons" stand accused of what appears in substance to be the identical conspiracy of which Dennis and others were convicted in the Southern District of New York. United States v. Foster, D.C.S.D.N.Y.1949, 9 F.R.D. 367, 374–375.

With respect to Communist Party discipline, Mr.Chief Justice Vinson said for the Court in Dennis v. United States, supra, 341 U.S. at page 498, 71 S.Ct. at page 861; "[T]he Court of Appeals held that the record supports the following broad conclusions: * * * that the Communist Party is a highly disciplined organization, adept at infiltration into strategic positions, use of aliases, and double-meaning language; that the Party is rigidly controlled; that Communists, unlike other political parties, tolerate no dissension from the policy laid down by the guiding forces, but that the approved program is slavishly followed by the members of the Party * * *."

 Another of the circumstances surrounding the offense charged is the matter of common knowledge, of which the court may take judicial notice, Brown v. Piper, 1875, 91 U.S. 37, 42, 23 L.Ed. 200; United States v. John J. Felin & Co., 1948, 334 U.S. 624, 68 S.Ct. 1238, 92 L.Ed. 1614, that persons may freely cross the border into the Dominion of Canada and likewise into the Republic of Mexico. The court may also take judicial notice of our treaties with those countries. Dainese v. Hale, 1875, 91 U.S. 13, 20, 23 L.Ed. 251; see also Ennis v. Smith, 1852, 14 How. 400, 55 U.S. 400, 427–430, 14 L.Ed. 472; The New York, 1899, 175 U.S. 187, 196–197, 20 S.Ct. 67, 44 L.Ed. 126.

Our 1842 Extradition Treaty with Great Britain, which includes within its scope the Dominion of Canada, provides for extradition only "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed * *." 8 Stat. 572, 576 (1842).

This provision, see 47 Stat. 2122, 2125, Art. 9 (1932), served to prevent extradition from England by the United States of

Gerhart Eisler who fled justice in this country in 1949. London Times, May 28, 1949, p. 2, col. 1.

Applicable provisions of our extradition treaties with both the Dominion of Canada and the Republic of Mexico are quoted in United States v. Schneiderman, supra, 102 F.Supp. at page 68. Those provisions are such as to render it highly doubtful whether any of the accused could be extradited from either Mexico or Canada. See Supplementary Treaty of 1889 with Great Britain, Arts. II, III, 26 Stat. 1508, 1509; also our Treaty of 1899 with Mexico, 31 Stat. 1818, 1821, 1822–1823; cf. United States v. Burgman, D.C.1950, 89 F.Supp. 288, 289.

■ When bail is furnished, as Mr. Justice Field observed in Reese v. United States, 1869, 9 Wall. 13, 76 U.S. 13, 21–22, 19 L.Ed. 541: "By the recognizance the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty. *This power of arrest can only be exercised within the territory of the United States; and there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent.*" (Italics added.)

See, also: United States v. Field, 2 Cir., 1951, 190 F.2d 554, 555; Longsdorf, Is Bail a Rich Man's Privilege? 7 F.R.D. 309, 1947.

The teachings of experience continue to dictate complete denial of bail as of right in capital cases. Fed.R.Crim.P. 46(a). However, there is but brief experience to teach what bail "will insure the presence of the defendant" when charged with a conspiracy to violate the Smith Act. It is a matter of general knowledge which the court may judicially notice, Parker v. Brown, 1943, 317 U.S. 341, 363, 63 S.Ct. 307, 87 L.Ed. 315; Jefferson Electric Co.

v. N. L. R. B., 7 Cir., 1939, 102 F.2d 949, 954; Greeson v. Imperial Irr. Dist., 9 Cir., 1939, 59 F.2d 529, 531, that the eleven defendants [United States v. Foster, supra, 9 F.R.D. at pages 371, 374] similarly charged in Dennis v. United States, supra, 341 U.S. at page 495, 71 S.Ct. 857, 95 L.Ed. 1137, were at liberty pending appeal. Williamson v. United States, 2 Cir., 1950, 184 F.2d 280, (Mr. Justice Jackson as Circuit Justice). And when the time came for execution of the sentence following affirmance on appeal, four of the eleven—36%—forfeited their bail of $20,000 each. Cf. Yankwich, Release on Bond by Trial and Appellate Courts, 7 F.R.D. 271, 274–275, 1947.

It is also a matter of common knowledge of which the court may take judicial notice that one of these four defendants was recently apprehended in the Republic of Mexico. Flynn, What's Story of Hall Arrest? Daily People's World, October 22, 1951, p. 6; Magil, Protests against Hall's Seizure Sweep Mexico, id., October 24, 1951, p. 4; Magil, The Hall Affair Shakes Mexico, id., November 9, 1951, p. 8; and see National Maritime Union of America v. Herzog, D.C. 1948, 78 F.Supp. 146, 167–169, affirmed, 1948, 334 U.S. 854, 68 S.Ct. 1529, 92 L.Ed. 1776; Jefferson Electric Co. v. N. L. R. B., supra, 102 F.2d at page 954.

Assuming for the purposes of these proceedings that the Communist Party is of the character, and party discipline of the nature, described by the Congress in Section 2 of the Subversive Activities Control Act of 1950, 64 Stat. 987, 50 U.S.C.A. § 781, and by a majority of the Justices of the Supreme Court. American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 433, 70 S.Ct. 674, 94 L.Ed. 925; Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 195, 71 S.Ct. 624, 95 L.Ed. 817; Dennis v. United States, supra, 341 U.S. at pages 497–498, 510–511, 546–547, 71 S.Ct. 857, there would seem to exist a real risk that any member circumstanced as the defendants at bar—"rigidly disciplined members subject to call when the leaders * * * felt that the time had come for action" Dennis v. United States, supra, 341 U.S. at 511, 71 S.Ct. at page 868 might be ordered to Canada or Mexico

rather than permitted to remain here for trial. Surely the certainty of forfeiture of substantial bail in event of such action would tend to minimize such a risk.

 After hearing all evidence the defendants chose to offer in support of their motions, it appears that "the nature * * of the offense charged" is uncommonly grave; that the indictment must be considered as establishing, for the purpose of these proceedings, "probable cause to believe that an offense has been committed and that the defendant has committed it" see Fed.R.Crim.P. 5(c), 40(b)(3, 4); Beavers v. Henkel, supra, 194 U.S. at page 84–85, 24 S.Ct. 605, 48 L.Ed. 882; Hale v. Henkel, 1906, 201 U.S. 43, 60–63, 26 S.Ct. 370, 50 L.Ed. 652; United States ex rel. Kassin v. Mulligan, 1935, 295 U.S. 396, 400, 55 S.Ct. 781, 79 L.Ed. 1501; Barber v. United States, 4 Cir., 1944, 142 F.2d 805, 807, certiorari denied, 1944, 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1574; that the evidence offered by each defendant as to "financial ability * * to give bail" is highly unsatisfactory; that the evidence—or rather lack of evidence—as to "the character" of each defendant for the purposes of fixing bail is even more unsatisfactory.

The foregoing observations apply to each of the defendants. There are of course some differences of degree in proof, in circumstances of family and residence, and in circumstances of employment. But these are not in my opinion such as to warrant any difference in treatment as to bail prior to trial in this case, bearing in mind "the circumstances of the offense charged," and especially the circumstances that the defendants are not only accused as conspirators, but also as members of essentially the same conspiracy as that of which eleven of their alleged co-conspirators were convicted in the Dennis case.

 It would make a heavy task light indeed to be able to lean on the justly revered common law doctrine of judicial precedent and say that stare decisis dictates lowering the bail of these three defendants to $10,000 or $5,000 in keeping with the order made by the Court of Appeals as to the twelve defendants in Stack v. United

States, supra, 9 Cir., 193 F.2d 875. But the Supreme Court cautions in Stack v. Boyle, supra, 72 S.Ct. at page 4, that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant. The traditional standards as expressed in the Federal Rules of Criminal Procedure are to be applied * * * to each defendant." See Carroll v. Carroll, 1852, 16 How. 275, 57 U.S. 275, 286–287, 14 L.Ed. 936.

The bail of $50,000 now set for each of the defendants was fixed upon recommendation of the grand jury which heard the evidence and returned the true bill. The United States Attorney added his official recommendation to that of the grand jury.

 Of course, as Mr. Justice Jackson observed upon concurring in Stack v. Boyle, supra, 72 S.Ct. at page 6: "It is not the function of the grand jury to fix bail, and its volunteered advice is not governing." However, the rational basis which experience lends to the presumption that both grand jury and United States Attorney have faithfully performed their official duties gives weight to the recommendation. Cf. Baker v. Hudspeth, 10 Cir., 1942, 129 F.2d 779, 782, certiorari denied sub nom. Baker v. Hunter, 1942, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546.

In legal effect, the recommendation can amount to nothing more than an expression of opinion—argument. But the view is ventured that such an "argument," as well as defense counsel's arguments for a lower amount, are of great assistance to trial judges who are called upon continually to make the speculative determination necessarily inherent in adjudging what amount "will insure the presence of the defendant," having regard to the four criteria specified in Rule 46(c).

 Narrowness of judicial experience in cases involving the Smith Act should serve to broaden the bounds of reason within which reasonable persons may differ in fixing the amount of bail in such cases.

We are wisely admonished that: "We must ever bear in mind that in law we have a taught tradition of experience developed

by reason and reason tested by experience." Pound, Justice According to Law 60 (1951).

As stated in United States v. Schneiderman, supra, 102 F.Supp. 74, I readily confess lack of that gift of prescience which would enable a finding either that $5,000 bail would be unreasonably low or that $100,000 bail would be unreasonably high for each of the defendants in this case. See Meltzer v. United States, 9 Cir., 1951, 188 F.2d 913.

 The manifest duty of the judge, having regard to the criteria specified in Rule 46(c), is to fix an amount which in his conscientious judgment is sufficient to "insure the presence of the defendant". On the other hand, as the court admonished in Stack v. Boyle, supra, 72 S.Ct. at page 3: "Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." See Wong Wing v. United States, 1896, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140.

It is my judgment, having considered the evidence which the parties have chosen to submit relevant to the criteria which Rule 46(c) commands the court to consider, that no less an amount than $50,000 bail as to each of the defendants "will insure the presence" within the meaning of the rule. The motion of each of the defendants to reduce the bail of $50,000 heretofore fixed must therefore be denied; and it is so ordered.

Appendix
United States Court of Appeals
Ninth Circuit

| | |
|---|---|
| Loretta Starvus Stack, Al Richmond, Phillip Marshall Connelly, Dorothy Rosenblum Healey, Ernest Otto Fox, William Schneiderman, Carl Rude Lambert, Henry Steinberg, Oleta O'Connor Yates, Rose Chernin Kusnitz, Mary Bernadette Doyle, and Albert Jason Lima, Appellants, vs. United States of America, Appellee. | No. 13180 Order |

Appeal from Order Denying Motion to Reduce Bail.

Before DENMAN, Chief Judge, and MATHEWS, STEPHENS, HEALY, BONE, ORR and POPE, Circuit Judges.

The order denying the motion of appellants to reduce the bail of $50,000 is reversed. The case is remanded and the district court ordered to enter orders as follows:

For each of the appealing defendants, Loretta Starvus Stack, William Schneiderman, Albert Jason Lima, Carl Rude Lambert, Oleta O'Connor Yates, Henry Steinberg, Mary Bernadette Doyle an order that he or she be released from confinement upon the posting of bail in the sum of $10,000 cash or bond conditioned as required by law, to be approved by the District Court for the Southern District of California and filed with the Clerk of that court.

For each of the following appealing defendants, Al Richmond, Philip Marshall Connelly, Dorothy Rosenblum Healey, Rose Chernin Kusnitz, Ernest Otto Fox an order that he or she be released from confinement upon the posting of bail in the sum of $5,000 each or bond conditioned as required by law, to be approved by the district court for the Southern District of California and filed with the Clerk of that court.

WILLIAM DENMAN
Chief Judge

ALBERT LEE STEPHENS

WILLIAM HEALY

WALTER L. POPE,
Circuit Judges.

BONE and ORR, Circuit Judges (concurring in part and dissenting in part).

We concur in the order of this court reversing the order of the District Court denying the motion to reduce bail theretofore fixed in the sum of $50,000.

We dissent from the order of this court fixing bail of certain of the appealing defendants at $10,000 and of other appealing defendants in the sum of $5,000, for the reason that we deem said amounts to be inadequate.

MATHEWS, Circuit Judge (dissenting).

On the grounds and for the reasons stated in its opinion, United States v. Schneiderman, D.C.S.D.Cal., 102 F.Supp. 52, the District Court's order should be affirmed.